**GANNETT OUTDOOR COMPANY OF TEXAS, Appellant,**

v.

**Louise Olive KUBECZKA, Appellee.**

**No. A14–85–489–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 13, 1986.

Rehearing Denied March 13, 1986.

82

Gerald P. Coley, Don Jackson, Houston, for appellant.

John C. Werner, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a judgment for appellee for damages to her home caused when Appellant's billboard fell during Hurricane Alicia. The controlling question is whether a party may call as a *rebuttal witness* a person who qualifies as an expert witness but has not been listed in pre-trial discovery as an expert witness who is expected to be called to testify. We believe it is proper. The judgment of the trial court is affirmed.

In August of 1983, during Hurricane Alicia, Appellant's billboard, located on adjacent property, fell on Appellee's house. Appellant tracked the movement of Hurricane Alicia and secured a number of its billboards in the Gulf Coast area by removing face panels to reduce the effect of the force of the wind on the large flat surfaces. Appellant claims the signs were secured in those areas of the city where the weather forecasters believed the hurricane would hit. Appellant alleges it secured approximately twenty-five percent of the billboards it owned in the area. Although the sign next to Appellee's home was one of the largest of Appellant's billboards, it was not secured. The billboard was seventy-eight feet wide and twenty-four feet high. The distance from the top of the sign to the ground was eighty-five feet.

Witnesses testified that approximately six weeks before the hurricane struck, Appellant's manager had received a written report advising him the sign was defective and in need of repairs. The report, filed by an expert hired by Appellant, recommended that steel gussets be installed for support of the sign. These had been ordered but not installed at the time of the hurricane. However, Appellant contends the sign fell because of the unexpected force of the wind, not the pre-existing condition of the sign. The parties make conflicting claims as to the force of the hurricane winds. Appellant claims the winds reached 120 miles per hour, whereas Appellee cites information secured from the National Climatic Data Center that the winds at Houston Intercontinental Airport, located on the north side of Houston, were 51 to 78 miles per hour, and the highest winds at Hobby Airport, located on the southeast side of Houston, were 81 to 99 miles per hour. Appellee's home is also located on the north side of the city, approximately equidistant from the two airports.

Appellee filed suit for property damage under negligence theories. Appellant denied liability and alleged that Appellee's loss was due to an Act of God, the unpredictably high winds and the unpredictable course of the hurricane. The jury awarded Appellee $30,400 as the difference in the fair market value of her home before and after the storm, $20,000 for personal property loss, and $190,000 as exemplary damages.

Appellant brings sixteen points of error on appeal. In the first, it claims the trial court erred in overruling its objection to the testimony of an unannounced expert witness called by Appellee. Appellee had not disclosed this witness's identity in response to Appellant's interrogatories and requests for production. We agree with Appellee that the trial court correctly admitted the witness Aigner's testimony based on the trial court's apparent finding of good cause requiring his testimony.

Appellee contends Aigner was called solely in rebuttal to false testimony given

by Appellant's witnesses. Appellant testified no one had advised them of any defect in or repair necessary to the billboard in question, and further denied the existence of any written report concerning the dangerous condition of the billboard. Appellant objected to the testimony of Aigner because he was an expert witness who had not been identified prior to trial pursuant to Rule 166b(2)(e) of the Texas Rules of Civil Procedure.

■ Rule 166b(2)(e) provides for the discovery of the identity and expected testimony of expert witnesses. A party may also obtain discovery of the identity and location of persons having knowledge of relevant facts. TEX.R.CIV.P. 166b(2)(d). A party is obligated to designate any expert it expects to call and to disclose the substance of his testimony as soon as practicable, but at least thirty days before trial. TEX.R. CIV.P. 166b(5)(b). A party who fails to timely supplement his response to a discovery request in accordance with Rule 166b(5) is not entitled to offer the expert's testimony "unless the trial court finds that good cause sufficient to require admission exists." TEX.R.CIV.P. 215(5). Not only must such good cause exist, but the offeror must show it compels the admission of the testimony. *Texas Industries v. Lucas*, 634 S.W.2d 748, 758 (Tex.App.—Houston [14th Dist.] 1982), *rev'd on other grounds*, 696 S.W.2d 372 (Tex.1984).

The trial court overruled the objections and allowed the testimony. Aigner testified that he is a design engineer with experience in inspecting large advertising signs and evaluating their structural soundness. He was hired by Appellant to inspect certain signs and to render a report as to each sign he inspected. Approximately eight weeks before Hurricane Alicia, he inspected the sign in question and provided Appellant with a written report and photographs, informing it of problems with the sign's structure and suggesting repairs. His testimony directly contradicted that of two officers and a foreman of Appellant that there were no reports concerning maintenance or repairs for that sign.

Appellee argues that good cause sufficient to permit Aigner's testimony was shown because he could not anticipate the false testimony of Appellant's witnesses who denied that a report critical of the billboard was given them by an independent consultant. Aigner was therefore called as a rebuttal witness, to refute the surprise testimony, and not as an expert. In *Temple v. Zimmer U.S.A. Inc.*, 678 S.W.2d 723 (Tex.App.—Houston [14th Dist.] 1984, no writ), this court allowed a doctor previously unidentified in pre-trial discovery to testify in a products liability and medical malpractice suit in a rebuttal capacity. We affirmed the judgment of the trial court, observing that the exclusion was within the trial court's discretion.

■ This is a classic example of an expert witness whose use as a rebuttal witness could not be anticipated *prior* to the giving of false testimony. Appellant hired Aigner to report to it on the condition of the signs, and it had written notice of the dangerous condition of the billboard in question, as well as what was necessary to make the billboard structurally safe. Apparently Appellant's surprise was that Appellee *found* Aigner, not that he was called as a witness. In the event Appellant's witness testified truthfully about the condition of the billboard, the inspection by Aigner and the report, Appellee could not have called Aigner as a witness under the rules of procedure; further, his testimony would not have been necessary.

We find that the witness Aigner was fully known to Appellant and that he testified regarding evidence Appellant apparently tried to conceal. Appellant's vice-president of operations testified, subsequent to Aigner's testimony, that Aigner had given him a written report but that he had thrown it away at the end of the year because they had completed the work recommended in it. However, Appellant admitted the wrap-around gussets recommended in the report had not been installed. Appellant offered no testimony contradicting Aigner's testimony. Therefore, without Aigner's testimony, material and

relevant facts would have been withheld from the court and the jury.

 An appellate court cannot reverse a judgment and order a new trial on the ground that the trial court has committed an error of law unless the appellate court believes the error amounted to such a denial of Appellant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.CIV.P. 434. We believe the admission of Aigner's testimony did not cause the rendition of an improper judgment, and we find it was based on compelling good cause shown. We overrule the first point of error.

In the second point, Appellant claims the trial court erred in its refusal to submit an instruction on new and independent cause in its jury charge. Appellant objected to the omission at the appropriate time. Appellant claims the billboard fell because of the unanticipated force of the hurricane and not because it was negligent in maintaining the sign or in failing to remove its face panels. It argues the standard of review is whether there was *some* evidence of new and independent cause introduced at trial to support such an issue, citing *Scott v. Atchison, Topeka and Santa Fe Railway*, 572 S.W.2d 273 (Tex.1978). In *Scott*, the court found "much evidence" that the accident in question was caused by an Act of God due to unprecedented rains and flash flooding. The court considered this defensive concept as in the nature of an inferential rebuttal issue, thereby requiring an explanatory instruction, but not submission as a separate issue. *Id.* at 279. However, an issue concerning an Act of God was not submitted in the present case. Appellant's requested jury instruction stated:

New and independent cause means the act or omission of a separate and independent agency, not reasonably foreseeable, which destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

 The distinction between a true intervening act or agency which supersedes the original negligent act and of itself becomes the efficient cause, and a "concurring" act which cooperates with the still persistent original act in bringing about the injury was discussed in *Bell v. Campbell*. There the court observed the conditions created by the defendant's initial negligence must not have run their course and must have actively contributed to the injuries; if so, the original negligence remained a proximate cause of the injury. *Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex.1968). The intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from the consequences of his negligence if that negligence directly and proximately "cooperates" with the independent cause in the resulting injury. *Chicago, Rock Island & Pacific R. Co. v. Goodson*, 242 F.2d 203, 207 (5th Cir.1957) (applying Texas law); *See Texas Power & Light Co. v. Culwell*, 34 S.W.2d 820, 821 (Tex. Comm'n App.1931, holding approved); *Texas Public Service Co. v. Armstrong*, 37 S.W.2d 294, 296 (Tex.Civ.App.—Austin 1931, writ ref'd). If an actor's conduct is a "substantial factor" in causing harm to another, the fact that he did not foresee nor should have foreseen the extent of the harm or the manner in which it occurred does not preclude his liability. RESTATEMENT (SECOND) OF TORTS § 435(1) (1965); *Biggers v. Continental Bus Systems*, 157 Tex. 351, 303 S.W.2d 359, 365 (1957).

 In the present case, the consequences of Appellant's negligence in failing to implement the necessary repairs to stabilize the sign, or in failing to remove the face panels, had not run their course by the time of the hurricane. This lack of adequate precautionary measures actively contributed to the sign's falling on Appellee's home. Even assuming that the force of the hurricane winds was not foreseeable by Appellant, it is nonetheless liable to Appellee for its negligence, which directly and proximately "cooperated with" or "concurred with" the hurricane winds in pro-

ducing the injury. *See General Motors Corp. v. Simmons*, 545 S.W.2d 502, 518 (Tex.Civ.App.—Houston [1st Dist.] 1976), *rev'd on other grounds*, 558 S.W.2d 855 (Tex.1977).

■ Appellant argues there was "some" evidence of "new and independent cause" such that the jury should have been able to determine whether the strong winds which it claims reached 120 miles per hour were a new and independent cause of Appellee's injuries. It argues that the Houston Building Code requires signs 73 feet high to withstand winds of 98.6 miles per hour. "Obviously," Appellant states, "the City of Houston and the billboard industry in general did not reasonably foresee the forces on Gannett's sign." With respect to the issue of whether the causal connection between the alleged negligence and the sign's failure was broken by the hurricane, Appellant points out that it had regularly maintained the sign and had performed maintenance work on it less than two months before the hurricane. It argues further that there is no evidence the sign would have failed had it not been for the hurricane's force. However, we do not find evidence to support Appellant's assertion that the unforeseen force of the wind was a superseding "new and independent" cause of the damages under any of the tests we have noted. Its negligence was the primary conduct which acted concurrently with the high winds to cause the sign's failure. In other words, it was a *substantial factor* in the occurrence. RESTATEMENT (SECOND) OF TORTS § 435(1) (1965). The trial court correctly refused the instruction. We overrule the second point of error.

In the third point, Appellant claims the trial court erred in overruling its Motion for New Trial because Appellee engaged in improper, incurable and prejudicial jury argument. Specifically, it complains that Appellee attacked the utility of large billboards, implied an industry conspiracy to stick together, and generally belittled Appellant, its counsel and witnesses by telling the jury Appellant had lied to them and had

been unfair. Further, it claims Appellee's counsel argued to the jury, in contravention of the court's instruction, that the law was sympathetic to Appellee and that sympathy should play a part in their deliberations concerning exemplary damages. It also complains the Appellee's counsel urged jurors to send a message to the billboard industry that the citizens of Harris County would not tolerate its attitude. Ultimately, Appellant claims the cumulative nature of the improper argument rendered it incapable of cure and had a probable effect on the punitive damages assessed.

■ A party complaining of improper jury argument has the burden to prove: (1) error, (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand from the trial court, (5) the argument by its nature, degree and extent constituted reversibly harmful error. Further, the record must be closely examined to determine (6) the argument's probable effect on a material finding, and (7) reversal must come from an evaluation of the entire case. In summary, the complainant must show that from a consideration of all these factors, the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proceedings and the evidence. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex.1979); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 597 (Tex. App.—Corpus Christi 1982, writ ref'd n.r. e.); TEX.R.CIV.P. 434, 503.

■ Improper jury argument is either curable or incurable. Incurable argument occurs when it is so inflammatory that its harmful or acutely prejudicial nature cannot be cured by an instruction to disregard. In such cases, failure to object does not constitute waiver. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968). The test of improper jury argument is whether a juror of ordinary intelligence

could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument. *Texas General Indemnity Co. v. Moreno*, 638 S.W.2d 908, 913 (Tex.App.—Houston [1st Dist.] 1982, no writ), quoting *Goforth v. Alvey*, 153 Tex. 449, 271 S.W.2d 404 (1954); *Twin City Fire Insurance Co. v. King*, 510 S.W.2d 370, 374 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.).

Appellant does not claim to have made proper objection at trial to the arguments of which it complains. It argues the cumulative nature of the argument rendered it incapable of cure by instruction. We find the alleged instances of improper jury argument do not reflect the greater probability that the improper argument caused harm than that the verdict was grounded on the proceedings and the evidence. We further find sufficient evidence in the record from which the jury could reasonably have found Appellant misrepresented the truth, withheld material evidence and ignored recommendations to render the sign safe. Based on this evidence, the jury could reasonably assess punitive or exemplary damages. However, by failing to object and press for an instruction at the time of argument, Appellant has waived its complaint. We overrule the third point of error.

■■■ In its points of error four through seven, Appellant complains the trial court erred in submitting Special Issues Nos. 4 and 5 and in basing judgment on them. It contends there was no evidence or insufficient evidence that its failure to remove the face panels of the sign was negligence or a proximate cause of the occurrence. To the extent these points of error and subsequent points complain of the factual sufficiency of the evidence, they are overruled. A claim that the evidence was insufficient to support the submission of any issue may be made for the first time after verdict, regardless of whether the submission of such issue was requested by the complainant. TEX.R.CIV.P. 279. However, the word "insufficient" as used

in the rule does not mean the evidence is factually insufficient to support an affirmative finding on an issue. Rather, it means there is "no evidence" to warrant the submission of the issue. *Myers v. Crenshaw*, 134 Tex. 500, 137 S.W.2d 7, 13 (1940); *Texas Farm Products Co. v. Stock*, 657 S.W.2d 494, 501 (Tex.App.—Tyler 1983, writ ref'd n.r.e.); *Simon v. Henrichson*, 394 S.W.2d 249, 257 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.); *See also Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex.1967); TEX.R.CIV.P. 301. To review a "no evidence" point, this court must consider only the evidence and its inferences that support the judgment, and if there is any evidence of probative force to support the finding, such finding is conclusive and binding. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■■■ It is undisputed that Appellant failed to remove the face panels of this sign before the hurricane struck, although it began removing face panels from other signs in the predicted path of the hurricane several days before it hit. To establish liability based on negligence, a party must prove the defendant did something an ordinarily prudent person exercising ordinary care would not have done under the same circumstances, or, that the defendant failed to do that which an ordinarily prudent person in the exercise of ordinary care would have done. *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 115 (1942); 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.01 (1969). To prove that a defendant failed to use "ordinary care," the plaintiff must show the defendant did not exercise that degree of care a person of ordinary prudence would have used under the same circumstances. *Dickson v. J. Weingarten, Inc.*, 498 S.W.2d 388, 391 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.01 (1969). Further, the mere occurrence of an accident is not evidence of negligence. *McKethan v. McKethan*, 477 S.W.2d 357, 362 (Tex.Civ.

App.—Corpus Christi 1972, writ ref'd n.r. e.).

To establish proximate cause, a plaintiff must prove that but for the act or omission complained of, the occurrence would not have occurred. Additionally, he must prove it was reasonably foreseeable that the act or omission complained of would cause the event which produced the injury. *Missouri Pacific Railroad v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977); 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.02 (1969). Appellant denies any evidence of cause in fact. An act or omission is a cause in fact if it is a substantial factor in bringing about an event which would not have occurred without the act or omission. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980); *Missouri Pacific Railroad,* 552 S.W.2d at 103. Further, foreseeability does not require that the actor anticipate just how injuries stemming from a particularly dangerous situation might occur. *Id.*

Appellant's vice-president of operations testified it would have removed the sign's panels if the sign had been in the predicted path of the storm. However, the crucial factor is not what it would have done, but what it should have done. Aigner, an expert hired by Appellant, filed a written report with Appellant and told them that the sign was defective and in need of fortification. Appellant ordered steel for the support gussets as recommended in the report; however, it failed to install them even with knowledge of the approaching hurricane. Further, they failed to remove the face panels on a sign known to be in danger of collapse, known to have a greater surface area than most of their signs and standing eighty-five feet above the ground.

We believe there was evidence to support the submission of these issues and the rendition of judgment based on the jury's finding that Gannett was negligent, and that this negligence was a proximate cause of Appellee's injury. We overrule points four through seven.

In points of error eight and nine, Appellant argues the trial court erred in submitting Special Issue No. 3 and in basing judgment on the jury's finding. It contends there was no evidence or insufficient evidence of its failure to maintain the sign, or that such failure was a proximate cause of the occurrence. Appellant alleges that if this finding is to be sustained, the record must contain some evidence that if it had maintained the sign differently, it would not have collapsed. We disagree with this assessment. We need only find some evidence from which the jury could reasonably have inferred that failure to maintain the sign was a proximate cause of the occurrence.

Aigner testified that the transitions on all six of the column pipes were in bad condition, with the welds cracked at the rings. Some of the welds were actually loose at the transition points. He recommended the installation of wrap-around gussets to make each transition point as strong as the pipe itself. Appellee's witness, Rowley, stated he was self-employed as a consultant and welding expert in the oilfield and construction industries and had done some work in the billboard industry. He testified concerning the original design and construction of the sign. Rowley also recommended the use of gussets to reinforce the transition points. He stated that, in his opinion, the sign would have withstood the hurricane if the gussets had been applied to the transition points, and *he did not believe they had been applied before the storm.* He testified the welding which had been done previously was insufficient to support the sign. He testified that photographs taken several weeks after the hurricane show that rust had formed on the pipe at the location in question. He further testified that this indicated the weld had pulled loose. Rowley also testified the rust could have occurred following the hurricane if the sign had been left lying in the rain.

Appellant argues Rowley's testimony should be disregarded because, as opinion

testimony, it was inadmissible. It contends his special knowledge was confined to welding and not to structure, design engineering or architecture, citing Sutton, Article VII: *Opinion and Expert Testimony,* 20 HOUS.L.REV. 458–61 (1983). Thus, Appellant argues, Rowley was incompetent to tell a jury that a sign without gussets would fail when subjected to hurricane winds. Further, incompetent opinion testimony is not evidence; a causation finding supported only by such testimony fails a "no evidence" challenge. Calvert, *No Evidence & Insufficient Evidence Points,* 38 TEXAS L.REV. 361, 362–63 (1960).

The test for admission, however, is whether the underlying technical or scientific principle is sufficiently reliable for the witness' testimony to be of assistance to the jury. *Opinion and Expert Testimony* at 459. Rowley's testimony concerned the maintenance of the sign as well as its design. Appellant purchased the sign five years prior to the hurricane. It testified that no written memoranda of repairs needed or performed on that sign existed, although it claims repairs were made on it many times. We believe it reasonable that the jury concluded Appellant lied and/or failed to keep proper maintenance records. Further, it had ample time to repair the welds and install gussets at the transition points before the hurricane, or to remove the face panels to reduce the force on the structure. Rowley's testimony concerning the necessary repairs did not transcend the area of his expertise. He did not claim to be an expert in the design of the signs. The trial court did not err in submitting the issue, as there was evidence to warrant its submission and the finding that Gannett's failure to properly maintain the sign was a proximate cause of the occurrence. We overrule the eighth and ninth points of error.

In points of error ten and eleven Appellant complains of the submission of Special Issue No. 7 and contends there was no evidence or insufficient evidence that the value of the personal property lost by Appellee was $20,000. The jury was instructed to consider the actual worth or value to Appellee of the items lost or damaged. In the twelfth point, Appellant claims error in the overruling of its Motion for New Trial and entering judgment on Special Issue No. 7 because there was no jury finding to support a judgment for damages to personal property.

Appellee testified that she had itemized her lost property by determining from her recollection what the items cost when she purchased them and what amount it would take to replace them. The value she stated was $19,973. Appellant presented testimony that the market value of Appellee's personal property prior to the loss was $9,425.40.

The law of damages distinguishes between marketable chattels possessed for sale purposes and those possessed for the well-being and comfort of the owner. Concerning the former, their value is determined by the market price. For the latter, value is determined by their use to the owner who is deprived of them. *Allstate Insurance Co. v. Chance,* 590 S.W.2d 703 (Tex.1979), quoting *Crisp v. Security National Insurance Co.,* 369 S.W.2d 326, 329 (Tex.1963). As a guide in arriving at actual value, both market and replacement values may be considered, as well as original cost, opinions on value given by qualified witnesses, the gainful uses to which the property has been put and any other useful facts. *Allstate,* 590 S.W.2d at 703–704. It is not necessary to prove an absence of market value as a condition precedent to showing the value of personal goods to the owner at the time of loss. *American Transfer & Storage Co. v. Reichley,* 560 S.W.2d 196, 198 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e.). Further, it is proper for the owner of the goods to testify as to their worth to him. *Id.* at 199. The trial court did not err in overruling the Motion for New Trial or in basing judgment on the finding. We overrule points of error ten through twelve.

Appellant argues in points thirteen and fourteen the trial court erred in submitting Special Issues Nos. 6 and 10 to the

jury and in basing judgment on them because there was no evidence or factually insufficient evidence that Appellant was guilty of gross negligence in its maintenance of the sign or its failure to remove the face panels. The court reviewing a finding of gross negligence looks to *all* the actions or circumstances indicating the gross negligence and considers the evidence in the light most favorable to the verdict, drawing every reasonable inference in support of the verdict. The evidence must show the defendant knew about the peril but demonstrated by his acts or omissions that he was consciously indifferent to it. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). Such conduct may be active or passive in nature. *Id.*

■ Here, the jury awarded punitive damages of $190,000 to Appellee based on its finding of gross negligence. Appellant had received Aigner's report concerning the necessity for repairs to the sign. It had ordered gussets as recommended for needed support because of the breaks in the welds at the transition points on the poles of the sign, but failed to install them. Appellant claims it buttressed the sign with plug welds; however, Appellee's expert welder, Rowley, testified the welds were old and inadequate. Clearly, the jury could believe whomever it chose. Appellant failed to take any precaution to protect Appellee's property even though a hurricane was approaching. Considering the known condition of the sign, its size and height above the ground, we find the evidence sufficient to support the finding of gross negligence; accordingly, we overrule points thirteen and fourteen.

In the fifteenth point, Appellant claims error in the admission of evidence of Appellee's attorney's fees. It contends attorney's fees were not recoverable in this cause of action and the evidence itself was improper, as it was based on contingent rather than reasonable attorney's fees. Appellee's evidence of a forty percent contingent fee contract was stricken but testimony of reasonable attorney's fees of $30,-000 was allowed. Appellant claims the harm and prejudice created by the initial evidence was incapable of cure and argues proof of this is in the magnitude of the punitive damages award, which Appellant believes was increased to include the amount of the contingency contract.

■ Attorney's fees are not recoverable in a tort action unless authorized by statute. *Turner v. Turner*, 385 S.W.2d 230, 233 (Tex.1964). However, exemplary damages may be awarded in addition to compensatory damages where a defendant acts wilfully or fraudulently, and may include reasonable attorney's fees. *Pan American Petroleum Corp. v. Hardy*, 370 S.W.2d 904, 908 (Tex.Civ.App.—Waco 1963, writ ref'd n.r.e.); *Allison v. Simmons*, 306 S.W.2d 206 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.). *Allison* was recently referenced by the Texas Supreme Court in approving the same fees. *Hofer v. Lavendar*, 679 S.W.2d 470, 474 (Tex.1984). Here, as no statute provided for fees, the jury was instructed to consider that evidence only in assessing exemplary damages.

■ The testimony concerning attorney's fees was not erroneous, as such were a compensable element of Appellee's damages. Thus, the evidence revealing the contingent fee contract, which was stricken by the court, did not cause the rendition of an improper verdict. We overrule the fifteenth point of error.

Appellant claims error in the sixteenth point based on the jury's answer to Special Issue No. 10, arguing that the award of $190,000 in punitive damages is excessive. It believes the testimony of Aigner and the improper evidence of attorney's fees caused the excessive award. Since we have disposed of the points complaining of error as to attorney's fees and the testimony of Aigner, we will deal only with the issue of excessiveness.

■ In determining whether exemplary damages are excessive, an appellate court must consider, inter alia, the degree of outrage produced by the evil and its frequency, the size of an award necessary

to deter similar wrongs in the future, and whether the amount is reasonably proportioned to the actual damages. *Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705, 705 (Tex.1970). An appellate court should not substitute its verdict on damages for that of the jury unless it is clear the jury acted from passion, prejudice, improper motive, or something other than conscientious conviction. The mere fact a verdict is large is not an indication of this. *International Harvester Co. v. Zavala*, 623 S.W.2d 699, 708 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). In reviewing an award of punitive damages, the appellate court should consider (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties, and (5) the extent to which the conduct offends a public sense of justice and propriety. *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Exemplary damages must be in reasonable proportion to actual damages, but no set rule or ratio exists between the amount of actual and exemplary damages which may be considered reasonable. *Id.; Neeley* at 708. For example, an award where the ratio of exemplary to actual damages was 12.5 to 1 was upheld in *K-Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632 (Tex.App.—Houston [1st Dist.] 1984), *writ ref'd n.r.e.*, 686 S.W.2d 593 (Tex.1985) (per curiam). That court found ratios were simply indications, and an award is viewed from the standpoint of the purpose of exemplary damages and the special considerations of the dispute. Such an award is uniquely within the jury's discretion. *Id.* at 640.

■ In the present case, the ratio of exemplary to actual damages is 3.8 to 1. Appellee's counsel had requested an award of $1,000,000 in punitive damages. In considering the factors specified in *Kraus* and the entire record before us, we find the award of punitive damages was not excessive. Accordingly, we overrule point of error sixteen.

In one cross-point, Appellee claims the trial court erred in allowing damages for Appellee's home based on the jury finding of fair market value before and after the hurricane instead of the reasonable cost of restoring the structure to its original condition. The trial court submitted both issues to the jury. The jury answered the repair issue in the amount of $40,000 and the before and after issue in the amount of $30,400. Appellee contends the judgment should be reformed to award her the $9,600 difference. We disagree.

■ Permanent injury to real property is constant and continuous, not intermittent or recurrent. In such an instance, the cause of action for permanent damages is the difference in the value of the property before and after the injury. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). A temporary injury is sporadic and contingent on some irregular force. Damages for it are measured by the amount necessary to place the owner of the property in the same position he occupied before the injury. *Id.* In *Langford*, the flow of surface water through a storm drainage system onto plaintiff's land depended on rain and, therefore, was not continuous.

Here, Appellee could no longer live in her home. A remodeler testified the home was repairable and that he had rebuilt homes which had sustained as much damage as that of Appellee. However, he also testified it would be better to build a new home than repair the old one. He estimated it would cost $48,000 to repair the old structure to restore it to its previous condition, but the cost of a new home would be $38,000.

We believe the nature and extent of the damage to Appellee's home resulted in permanent injury. Therefore, the jury award was correctly based on the difference in market value before and after the occurrence. We deny Appellee's cross-point.

The judgment of the trial court is affirmed.