**Don CLAYTON, Appellant,**

v.

**FIRST STATE BANK OF GAINESVILLE, Appellee.**

**No. 2–89–004–CV.**

Court of Appeals of Texas, Fort Worth.

Sept. 28, 1989.

H.C. McCracken, McCracken, Taylor, & Nelson, P.C., Sherman, for appellant.

Harold D. Beck, Gainesville, J.S. "Sandy" Freels, Jr., Sherman, for appellee.

Before JOE SPURLOCK, II, KELTNER and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellant, in three points of error, attacks the trial court's ruling allowing appellee to call a witness concerning appellant's reputation despite appellee's failure to identify the witness in response to an interrogatory inquiring about all witnesses having knowledge of relevant facts. The court allowed the testimony of the reputation witness under TEX.R.CIV.EVID. 608(a).

We affirm. We find the court's ruling was in error, but did not cause the rendition of an improper judgment.

Appellant, Don Clayton, had been a customer of appellee, First State Bank of Gainesville (Bank), for a number of years prior to this suit. In 1985, Clayton sold his business for a $69,000 cash down payment and a $200,000 note secured by a lien on the business. The Bank required Clayton to make a collateral assignment of the $200,000 promissory note Clayton had received from the business sale as security for another loan which Clayton had at the Bank. Clayton later attempted to sell the note, but the Bank allegedly blocked the sale. The maker of the note then defaulted on the note and Clayton sued the Bank. Clayton claimed the Bank had orally offered to buy the promissory note but then refused to honor the agreement. Clayton claimed the Bank's offer prevented him from selling the note to other prospective buyers.

At trial, Clayton presented his case and rested. The Bank then called three witnesses to present its defense of Clayton's allegations. Outside the presence of the jury, the Bank then announced it would call Phil Adams, the Cooke County District Attorney, to testify as to Clayton's reputation for truthfulness in the community. The Bank stated it could call Adams as a reputation witness pursuant to TEX.R.CIV. EVID. 608(a) because he was a character witness and Clayton's untruthful answers during his testimony invited such testimony. Clayton's attorney vigorously objected to the Bank's proposal and pointed out to the court that Adam's name had not been provided to them as a potential witness in response to their interrogatories and requests for production during pretrial discovery. The Bank then argued that Adams' identity was not required to be revealed to Clayton in response to his interrogatories and motion to produce because he was not a "fact witness" and Clayton's interrogatory had asked the Bank to "state the names and addresses of all persons having knowledge of relevant facts in this case."

Clayton again argued his objection because of the failure to disclose the witness' identity. The court ruled the Bank could call Adams as a reputation witness in accordance with rule 608(a). Adams then testified, with his testimony limited on direct exam to whether he knew Clayton, knew his reputation for truthfulness in the community, and whether that reputation was good or bad. Adams stated that he knew Clayton, he knew Clayton's reputa-

tion for truthfulness in the community, and he knew Clayton's reputation for truthfulness in the community was bad. Clayton's attorney then went into an extensive impeachment cross-examination of Adams.

The jury found for the Bank on a take-nothing judgment and Clayton brought his appeal. Clayton's three points of error all challenge the trial court's decision to allow Adams' testimony despite the Bank's failure to name Adams as a person having knowledge of relevant facts in response to a properly framed interrogatory.

TEX.R.CIV.P. 166b(6) provides, in part, a party who has responded to a request for discovery:

[I]s under a duty seasonably to supplement his response if he obtains information upon the basis of which:

(1) he knows that the response was incorrect or incomplete when made;

(2) he knows that the response though correct and complete when made is no longer true and complete and the circumstances are such that failure to amend the answer is in substance misleading....

Prior to the promulgation of TEX.R.CIV.P. 215(5),[1] courts held the failure of a party to supplement answers to interrogatories resulted in the automatic exclusion of testimony of an unidentified witness. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 297–98 (Tex.1986). A court could allow the testimony of the witness only if good cause existed for allowing the witness to testify. *Yeldell v. Holiday Hills Retirement & Nursing Center, Inc.,* 701 S.W.2d 243, 246 (Tex.1985). The supreme court recently stated that "a showing of good cause pursuant to rule 215(5) must encompass a showing of good cause for the offering party's failure to respond to proper discovery requests." *Clark v. Trailways,* 774 S.W.2d 644, 646 (Tex.1989). The burden of

establishing good cause was and is on the party offering the evidence. *E.F. Hutton & Co. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987); *Gutierrez v. Dallas Indep. School Dist.,* 729 S.W.2d 691, 694 (Tex. 1987).

The Bank maintained in the trial court and argues on appeal that a good cause showing was and is unnecessary because Adams was called as a witness pursuant to TEX.R.CIV.EVID. 608(a), which allows opinion and reputation testimony. The Bank's theory is that TEX.R.CIV.P. 215(5) is inapplicable to opinion or reputation witnesses. We do not agree.

Rule 215(5) is applicable to all witnesses whose identity is discoverable. The only question in this case is whether Adams' identity was discoverable in response to an interrogatory inquiring about fact witnesses.

The Bank persuaded the trial court that a witness who testifies as to reputation only is not required to be disclosed in response to an interrogatory inquiry about fact witnesses. However, the Bank presents us with no authority providing a "character" witness is not a "fact" witness whose identity should not be revealed in response to a properly framed interrogatory inquiring as to same.

The Bank relies on *Gannett Outdoor Co. v. Kubeczka,* 710 S.W.2d 79, 84 (Tex.App.— Houston [14th Dist.] 1986, no writ.), for the proposition that Adams' name was not required to be disclosed because he was used as a rebuttal witness. We find the Bank's reliance to be misplaced because the witness in *Gannett* was allowed to testify because he was a legitimate rebuttal expert witness necessary to refute surprise testimony. In this case, Adams' testimony was not necessary to refute surprise testimony. The Bank knew exactly what Clayton would testify to as Clayton had been de-

---

1. Rule 215(5) reads:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

posed and testified during trial the same as during his deposition.

We find no authority to indicate there should be a distinction between the naming of a fact witness and a character witness in response to an interrogatory inquiring about persons with knowledge of relevant facts. Thus, we find a reputation witness should be disclosed as a witness having knowledge of relevant facts. The ruling of the court in allowing Adams' testimony seemed to be based solely on TEX. R.CIV.EVID. 608(a), which allows a witness to testify about reputation, and not upon the "good cause" exception of TEX.R. CIV.P. 215(5). As the court found neither good cause to allow Adams' testimony nor good cause for the Bank's failure to supplement its answer to Clayton's interrogatory inquiring about fact witnesses, the court erroneously allowed Adams' testimony. *See Clark*, 774 S.W.2d at 646.

We must now determine whether the error mandates reversal. *See* TEX.R.APP.P. 81(b). As the Texas Supreme Court has instructed us:

> To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Bridges v. City of Richardson* [163 Tex. 292], 354 S.W.2d 366, 368 (Tex.1962); TEX.R.APP.P. 81(b). This court will ordinarily not find reversible error for erroneous rulings on admissibility of evidence where the evidence in question is cumulative and not controlling on a material issue dispositive of the case. *Whitener v. Traders and General Ins. Co.* [155 Tex. 461], 289 S.W.2d 233, 236 (Tex.1956); *see also Turner v. Monsanto Co.*, 717 S.W.2d 378, 381 (Tex.App. —Houston [14th Dist.] 1986, writ. ref'd n.r.e.). Thus, we must review the entire record to determine whether the judgment was controlled by the testimony that should have been excluded.

*Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989).

It is thus our duty to examine Adams' testimony to see if it resulted in an erroneous judgment. Adams' testimony, which was erroneously admitted, did not concern the actual controversy between the parties but it did reach a critical concern of the case because it involved Clayton's reputation for honesty. The task of the jury was to determine which party was telling the truth concerning the alleged agreement and it was obvious the intent of the Bank was to create as much doubt as possible concerning Clayton's version of the alleged agreement between him and the Bank.

The actual questioning of Adams by the Bank was limited to his knowledge of Clayton, whether he knew Clayton's reputation for truthfulness in the community, and whether that reputation for truthfulness was good or bad. Adams testified he knew Clayton, he knew Clayton's reputation for truthfulness in the community, and he knew Clayton's reputation for truthfulness was bad. Clayton was left no alternative but to enter into an extensive line of questions in order to impeach the credibility of Adams' testimony, which he was able to do with some degree of success. The cross-examination of Adams by Clayton's attorney showed Adams' reasons for his testimony, which were almost directly linked to his financial obligations to the Bank.

As Clayton's attorney brought out during cross-examination, Adams had several loans at the Bank. The Bank held a $250,000 mortgage on Adams' home, making Adams' mortgage payments $2,800 per month, and Adams had three of his automobile loans at the Bank. Clayton's attorney also elicited information from Adams showing Adams had two office building loans at Gainesville National Bank; one for $200,000 and one for $48,000 to $49,000. The monthly payment on the former loan alone was $2,000. Yet Adams also testified his net monthly income from his job as a district attorney was $3,600.

Further, Adams testified that Frank Morris, the Bank's president, was sometimes a guest in Adams' home and Adams had "very briefly" discussed the case with

Morris. Adams also stated he played golf with both Morris and Benjamin Hatcher, the Bank's executive vice president and loan officer.

In examining the record as a whole, the Bank's main defense was brought forth by the testimony of a number of witnesses who denied Clayton's version of what transpired. We fail to see how the jury was swayed by the testimony of a single witness, Adams, who testified only about Clayton's reputation, as opposed to weighing the combined testimony of the factual witnesses presented by both parties to arrive at their answers to the special issues. Further, as we previously noted, Clayton successfully impeached Adams during cross-examination by showing Adams' abundant debts to the Bank and his friendships with both the Bank's president and its executive vice president.

We do not find the trial court's error in allowing Adams' testimony resulted in an improper judgment. Appellant's three points of error are overruled.

The judgment of the trial court is affirmed.