**ORKIN EXTERMINATING CO., INC., Appellant,**

v.

**Kitty WILLIAMSON, Appellee.**

**No. 3–89–136–CV.**

Court of Appeals of Texas, Austin.

Feb. 28, 1990.

Rehearing Overruled April 4, 1990.

Mark J. Cannan, Lang, Ladon, Green, Coghlan & Fisher, San Antonio, for appellant.

Eric R. Galton, Daniel Jordan, Bankston, Wright & Greenhill, Austin, for appellee.

Before SHANNON, C.J., and JONES, J.

JONES, Justice.

Kitty Williamson sued Orkin Exterminating Company (Orkin) under theories of common law negligence and violations of the Deceptive Trade Practices Act (DTPA) for damages resulting from Orkin's application of chlordane, a pesticide, to Williamson's house. In addition to finding liability on both theories, the jury made findings of actual damages, attorney's fees, and exemplary damages. The trial court disregarded the jury's finding as to one element of actual damages, about which Williamson does not complain, and rendered judgment for Williamson on the remainder of the jury's verdict. We will affirm the trial court's judgment.

Orkin's ten points of error break down into the following general areas: (1) the admission of testimony regarding the emotional distress suffered by Williamson's son, (2) the exclusion of evidence offered to impeach Williamson regarding her source of information about chlordane, (3) the sufficiency of the evidence to support the jury's findings of liability under negligence and the DTPA, (4) the award of mental anguish damages in the absence of any other element of actual damages, (5) the simultaneous award of both attorney's fees and exemplary damages, (6) the sufficiency of the evidence to support the jury's finding of gross negligence, and (7) the global nature of the jury question on gross negligence.

In April 1987 Williamson discovered termites adjacent to her wood frame house. After contacting several pest control services, she chose to use Orkin. An Orkin representative, Abel Villareal, inspected Williamson's house and provided her with information about Orkin and pesticides. He also provided Williamson with an estimate of the cost to treat her house. Williamson testified that she specifically told Villareal not to apply chlordane, but rather to apply another pesticide, dursban. Villareal testified that Williamson did not instruct him to use either dursban or chlordane. Several days after Villareal's inspection, another Orkin employee, James Smith, came to Williamson's house and applied chlordane to eliminate the termite infestation. After applying the pesticide, Smith discussed a "preapplication checklist" with Williamson and presented her with a chemical receipt showing that chlordane had been applied. Expressing shock that her instructions had not been followed, Williamson immediately called her lawyer.

After Smith reported Williamson's complaint to his supervisors, Orkin placed Williamson and her two sons in a hotel while the chlordane-treated soil was removed from the premises. The soil was removed and the house was tested for the presence of chlordane. The test results showed that

some chlordane remained in the house, although the level of airborne contamination was below the standard established by the National Academy of Sciences as unacceptable. Williamson determined that she could not accept any level of chlordane in her house, and she lived in rented accommodations up to and including the time of trial.

At trial, Williamson submitted three theories of liability to the jury: (1) negligence, (2) use of a false, misleading, or deceptive act or practice, and (3) breach of the implied warranty to perform services in a good and workmanlike manner. The last two theories were pursued as violations of the Deceptive Trade Practices Act, Tex. Bus. & Com.Code Ann. §§ 17.41–17.63 (1987 & Supp.1990). The jury found Orkin liable under Williamson's negligence and breach of warranty causes of action and found actual damages of $15,000 for mental anguish and $16,600 for the value of personal property contaminated with chlordane. In addition, the jury found that Orkin had been grossly negligent and found $100,000 in exemplary damages. Finally, the jury found $25,000 in attorney's fees. Disregarding the jury finding of damages for contaminated property, the trial court awarded Williamson judgment for $15,000 actual damages, $100,000 exemplary damages, and $25,000 attorney's fees.

■ In point of error nine, Orkin asserts that the trial court erred in allowing the presentation of testimony by Dr. Robert Prall, a child psychiatrist, that related to the mental and emotional condition of Halsey Hammond, Williamson's thirteen-year-old son. Orkin asserts that such testimony was irrelevant.

Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Civ.Evid.Ann. 401 (Pamph.1989). Dr. Prall's testimony related to the psychiatric and personality effects that Orkin's actions had on Halsey Hammond. Dr. Prall testi-fied that the contamination of the Williamson house and the subsequent move and relocation had greatly upset Halsey, made him angry and discouraged with life, and caused him such emotional distress that he had failed the seventh grade. If this had been the extent of the testimony, it might well have been irrelevant to the issue of Williamson's mental anguish. However, Dr. Prall also testified that Halsey's emotional distress, which he stated was caused by the contamination of the house and the subsequent relocation, affected Williamson's emotional state; the more upset Halsey was, the more upset Williamson became. Dr. Prall testified that Williamson's mental anguish was caused, at least in part, by Halsey's problems.

Damages caused by injury to the family relationship are significant and worthy of compensation. *See Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983). Moreover, Dr. Prall's testimony tended to show the existence and degree of Williamson's mental anguish, which was a fact of consequence in the case. We conclude that the evidence was relevant. Orkin's ninth point of error is overruled.

■ Orkin's tenth point of error attacks the trial court's exclusion of certain testimony. Orkin sought to rebut Williamson's testimony that she had learned, at least in part, about the risks involved with chlordane from a series of promotional spots broadcast by a local television station. In order to introduce the records of the station, Orkin subpœnaed the custodian of the records. The trial court excluded the testimony of the custodian as a discovery sanction, finding that his identity should have been provided to Williamson pursuant to her interrogatory request that Orkin "identify ... each person, including experts, having knowledge of relevant facts relating to the occurrence made the basis of this lawsuit." Orkin asserts that it had no duty to identify the witness because the subject matter of the witness's testimony was not within the scope of Williamson's request, and that even if it had such a duty, its

response satisfied the request. Orkin also asserts that it made a showing of good cause for not identifying the witness.

Initially, Orkin argues that the witness from the station was not a person with knowledge of relevant facts *relating to the occurrence* because the witness merely had knowledge relating to the records of the station. However, the critical fact that Orkin was attempting to show by the witness was that the promotional ads claimed by Williamson as her source of information about chlordane were not broadcast until after Williamson had contacted Orkin and met with Villareal. Clearly, this is a fact relating to the occurrence. The subpoena served on the television station requested that the custodian produce the scripts relating to the station's program on pesticides; it did not request production of records relating to the content or broadcast dates of promotional ads for the show. The bill of exception prepared by Orkin demonstrates that the witness did not testify merely as a custodian of records, and there is no indication that he appeared at trial with any broadcast records. His testimony in the bill of exception as to the broadcast dates of the promotional spots was based on his own personal knowledge. Therefore, the trial court was entitled to conclude that the witness was a person with knowledge of relevant facts relating to the occurrence, and that he should have been identified by Orkin in its response to Williamson's interrogatory.

■ Orkin argues in the alternative that its interrogatory answers effectively identified the witness. It was at her deposition that Williamson first identified the television station's series on chlordane as the source of her information. Orkin's relevant interrogatory response concluded by referring to *"[i]ndividuals identified by plaintiff* and/or plaintiff's witnesses *through* Answers to Interrogatories, Responses to Requests for Production and *Depositions."* (Emphasis added.) From this, Orkin argues that the television-station witness was adequately identified in

the interrogatory answer. The rules of procedure require that interrogatories be "answered separately and fully." Tex.R. Civ.P.Ann. 168 (Supp.1989). The sufficiency of answers to any given set of interrogatories must be decided on a case by case basis because of the uniqueness of each fact pattern and the scope of the individual interrogatory. *Alexander v. Barlow*, 671 S.W.2d 531, 533 (Tex.App.1983, writ ref'd n.r.e.). We hold that Orkin's concluding response to Williamson's interrogatory was not sufficient to identify the station's custodian of records because: (1) the response specifically refers to "individuals" identified by Williamson, and at her deposition she did not identify any individual, much less the one who appeared at trial; and (2) the response was too vague to apprise Williamson of the existence of this specific fact witness. *See American Cyanamid Co. v. Frankson*, 732 S.W.2d 648, 655 (Tex. App.1987, writ ref'd n.r.e.).

■ Finally, for the same reasons stated above, Orkin asserts that it made a showing of good cause for failing to identify the witness under the holding of *Gannett Outdoor Co. v. Kubeczka*, 710 S.W.2d 79 (Tex. App.1986, no writ). *Kubeczka* stands for the proposition that a party need not identify a rebuttal witness whose use cannot be anticipated prior to trial. We do not find *Kubeczka* to be applicable here. The basis of Williamson's concern about chlordane, and when that concern was formed, were highly relevant factors regarding the disputed issue of whether she told Villareal not to use chlordane. When Orkin deposed Williamson it learned that she claimed to have learned about chlordane, at least in part, from the promotional spots for the station's series on pesticides. It also knew, of course, when the meeting between Williamson and Villareal had taken place. At that point, therefore, Orkin had enough knowledge to anticipate the relevancy of records and/or testimony from the television station showing when the promotional spots had been aired.

Orkin's response to Williamson's interrogatories was, in all likelihood, correct and

complete when made. However, a party is under a duty to supplement responses to interrogatories once it obtains information on the basis of which the party knows that its original response is no longer true and complete. Tex.R.Civ.P.Ann. 166b(6)(a) (Supp.1989). The failure to supplement a response results in the loss of the opportunity to offer the witness's testimony at trial; this sanction is automatic unless the trial court finds good cause to allow admission; the burden of establishing good cause is on the party offering the evidence; and good cause must be shown in the record. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986); Tex.R.Civ.P.Ann. 215(5) (Supp. 1989). The determination of good cause is within the trial court's discretion, and the ruling of the trial court may only be set aside for an abuse of discretion; in order to establish whether an abuse of discretion occurred, the reviewing court must ascertain whether the trial court acted without reference to any guiding rules or principles. *Stall v. Rothchild*, 763 S.W.2d 437 (Tex.App.1988, writ denied). Having been put on notice by Williamson's deposition testimony concerning how she claimed to have learned about chlordane, Orkin could have anticipated the need to rebut her testimony at trial. Accordingly, the witness from the television station was simply an ordinary rebuttal witness whose use could have been anticipated; rebuttal witnesses as such are not exempt from the scope of Rules 166b and 215. *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 876–77 (Tex.App.1988, writ denied); *Walsh v. Mullane*, 725 S.W.2d 263 (Tex.App.1986, writ ref'd n.r.e.). We conclude that the trial court did not abuse its discretion in excluding the witness. Orkin's tenth point of error is overruled.

▮▮▮ Orkin argues in its fifth and sixth points of error, that there was no evidence, or in the alternative, insufficient evidence to support the jury's answers to Questions 1 and 3. The jury found, in answer to Question 1, that Orkin's negligence was a proximate cause of damages to Williamson; in answer to Question 3, the jury found that Orkin's failure to perform services in a good and workmanlike manner was a producing cause of damages to Williamson, and that such failure was done knowingly. In considering a no evidence point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances that tend to support those findings. *Renfro Drug Co. v. Lewis*, 235 S.W.2d 609 (Tex.1950). In reviewing factual sufficiency points of error, the court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

▮▮▮ The record contains ample evidence to support the findings of Orkin's negligence and failure to perform services in a good and workmanlike manner. First, Williamson testified that she expressly instructed the Orkin salesperson, Villareal, that she did not want chlordane to be used in treating her house; Orkin then proceeded to use chlordane. Had Orkin not used chlordane, Williamson would not have been compelled to leave her house and would not have suffered mental anguish as a result of the loss of her home. This evidence alone supports the jury's verdict that Orkin's negligence and failure to perform in a good and workmanlike manner were a proximate and producing cause of Williamson's damages.

There is also uncontroverted evidence in the record of other actionable conduct on the part of Orkin. The record shows that Orkin took no steps to seal off any openings in the house, allowing chlordane to migrate into living areas; there is also evidence that this conduct was negligent. In addition, the record reveals that the Orkin employee who applied the pesticide failed to review the "pre-application checklist" with Williamson until after chlordane was applied to the house; this failure was shown to be a violation of Orkin's own policies.

Orkin also challenges the sufficiency of the evidence to support the jury's finding that Orkin knowingly breached the implied warranty. However, because no DTPA "additional damages" were awarded, this finding is not material to the trial court's judgment, and we need not address the issue.

From a review of the record, we conclude that the jury findings of liability for negligence and failure to perform services in a good and workmanlike manner are sufficiently supported by the evidence. Orkin's fifth and sixth points of error are overruled.

■ In point of error one, Orkin asserts that the trial court erred in entering a judgment in which the only element of actual damages was mental anguish. Orkin argues that mental anguish damages are not recoverable in the absence of other economic or physical harm. The Texas Supreme Court has eliminated the "physical manifestation" requirement as a prerequisite to the recovery of mental anguish damages in negligence actions. *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649 (Tex. 1987). In so doing, the court condemned the requirement as an unnecessary "artificial device, the sole purpose of which is to guarantee the genuineness of claims for mental injury." *Id.* at 652. To hold that "economic manifestation" of harm is required to recover mental anguish damages in negligence or DTPA actions would be inconsistent with the Supreme Court's rationale in eliminating the "physical manifestation" rule. *See HOW Ins. Co. v. Patriot Financial Serv., Inc.*, 786 S.W.2d 533 (Tex.App.1990 writ requested). Orkin's first point of error is overruled.

■ In points of error two, three, and four, Orkin asserts that the trial court erred in awarding both exemplary damages and attorney's fees because the verdict did not include separate and distinct findings of actual damages on which the awards could be predicated. Orkin claims that the

Supreme Court's holding in *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361 (Tex.1987), prohibits the recovery of exemplary or other "extra" damages (damages that can be recovered only after a finding of actual damages) based on a single damage question that is conditioned on multiple liability questions which rest on different legal theories. In essence, Orkin argues that *Birchfield* stands for the proposition that such extra damages can be recovered only when the court can "trace" the finding of actual damages, which is needed to support the extra damage award, back to the underlying theory of liability.

Orkin's assertion is incorrect. First, Orkin misconstrues the holding in *Birchfield*. The court in *Birchfield* held that

[i]n the absence of separate and distinct findings of actual damages on both the acts of negligence and the deceptive acts or practices, an award of exemplary damages and statutory treble damages would be necessarily predicated upon the same findings of actual damages and *would amount to a double recovery* of punitive damages.

747 S.W.2d at 367 (emphasis added). *Birchfield* holds merely that the same type of extra damages can be recovered under each of two different legal theories only if separate and distinct findings are obtained showing different actual damages under each theory. *Birchfield* does not stand for the proposition, as argued by Orkin, that no extra damages can ever be recovered unless the jury makes findings that allow the actual damages to be traced to one theory of liability. Indeed, because the court did allow a recovery on one of the two theories, *Birchfield* would seem to support the contrary proposition.

In addition, no true "tracing" issue is raised here. Although exemplary damages and attorney's fees may be awarded only where there is a finding of some actual damages, no specific amount of actual damages is necessary to support an award of either. Here, the negligence liability question could only be answered affirmatively if

the jury found that Orkin's negligence was a proximate cause of damages to Williamson; likewise, the DTPA liability question could only be answered affirmatively if the jury found that Orkin's breach of the implied warranty was a producing cause of damages to her. The jury's answer to the damage question was, therefore, linked to both liability questions. Accordingly, the simultaneous award of exemplary damages and attorney's fees need not be traced to a single underlying legal theory. Both awards are adequately supported by the jury's liability/causation findings.

■ Orkin also argues that the trial court erred in failing to force Williamson to elect between the jury's award of exemplary damages and attorney's fees. *See Service Lloyds v. Greenhalgh*, 771 S.W.2d 688, 695 (Tex.App.1989), rev'd on other grounds, 33 Tex.Sup.Cit.J. 387 (April 11, 1990). We disagree. Section 17.43 of the DTPA states:

> The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; provided, however, that no recovery shall be permitted under both this subchapter and another law of both actual damages and penalties for the same act or practice.

Tex.Bus. & Com.Code Ann. § 17.43 (1987). The Supreme Court has held that this section allows a plaintiff to recover simultaneously under the DTPA and other legal theories. *Kish v. Van Note*, 692 S.W.2d 463, 467 (Tex.1985); *cf. Byler v. Garcia*, 685 S.W.2d 116, 119 (Tex.App.1985, writ ref'd n.r.e.) (recovery of both statutory attorney's fees and common law exemplary damages not barred by election where statute provides for cumulative remedy).

While it is true that attorney's fees may be included in exemplary damages, they are not a necessary element in the computation of exemplary damages; this Court has held that a recovery of both attorney's fees and exemplary damages does not result in a double recovery. *Byler*, 685 S.W.2d at 120. In the present case, the jury question on exemplary damages in-structed the jury to consider "the losses sustained by Kitty Williamson, if any, not otherwise compensable such as compensation or inconvenience and expense of litigation, *not including attorney's fees and court costs.*" (Emphasis added.) Therefore, there was no double recovery of damages and no election was required. Orkin's points of error two, three, and four are overruled.

■ In point of error seven, Orkin asserts that there was no evidence or insufficient evidence to support the jury's finding of gross negligence. Gross negligence is defined as the "entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981). In other words, "the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care" about the other's rights, welfare, or safety. *Id.* at 922. What distinguishes gross negligence from ordinary negligence is the defendant's state of mind, and "[a]ll actions or circumstances indicating a state of mind amounting to a conscious indifference must be examined in deciding if there is some evidence of gross negligence." *Id.* In addition, the test for gross negligence is both an objective and subjective test; a plaintiff may prove a defendant's gross negligence by proving that the defendant had actual subjective knowledge of the risk or by proving that an ordinary person would have been aware of the risk. *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 573 (Tex.1985).

■ The evidence in the record supports a finding that Orkin acted with conscious indifference to Williamson's mental well-being. Williamson testified that she told Abel Villareal she did not want chlordane applied to her home. From this, the jury could infer that Orkin knew or should have known of Williamson's intolerance for

chlordane in or around her home. In addition, Orkin's failure to go over the pre-application checklist prior to the application of the chlordane was a violation of its own policies and procedures. Orkin apparently instituted this policy, at least in part, to prevent the very risk created here—the application of pesticide against the wishes of the homeowner. The failure to go over the checklist is sufficient for the jury to infer a conscious disregard of this very risk.

■■■ Orkin argues that because the levels of airborne chlordane found to be present within the Williamson home were lower than the National Academy of Sciences standard, there was no evidence that any conduct on the part of Orkin created an objectively extreme danger of risk. Because the jury could have concluded that Orkin had actual subjective knowledge of Williamson's intolerance of chlordane, a showing of an extreme danger of risk was not needed to demonstrate Orkin's conscious indifference. In addition, Orkin's argument ignores the testimony of an expert witness that levels of chlordane lower than the National Academy of Sciences standard could still pose a significant level of risk to a person's health and safety. We conclude, therefore, that the record contains sufficient evidence to support the jury's finding of gross negligence. Orkin's seventh point of error is overruled.

■■■ In point of error eight, Orkin argues that the global nature of the gross negligence question allowed the jury to consider acts unrelated to what may have predicated the affirmative answer to the negligence and proximate cause question. Question 5 asked, "Was the negligence of any employee of Orkin Exterminating Company gross negligence?" Question 1 asked, "Was a negligent act or omission, if any, by an employee of Orkin Exterminating Company a proximate cause of damages to Kitty Williamson?" Orkin argues that since the court admitted testimony relating to alleged negligence in the manner

in which chlordane-treated soil was removed and disposed of (acts unrelated to any damage to Williamson), the jury might have considered acts unrelated to Williamson's actual damages as the acts that amounted to gross negligence.

To determine whether an alleged error in the jury charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *See Island Recreation Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex. 1986). Alleged error will be deemed reversible only if, when viewed in light of the totality of the circumstances, it "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." Tex.R.App. P.Ann. 81(b)(1) (Pamph.1989).

Question 5, the gross negligence question, was expressly conditioned in the following manner: "If, in answer to Question No. 1, you have found that the negligence of any employee of Orkin Exterminating Company proximately caused damages to Kitty Williamson, then answer Question No. 5; otherwise, do not answer Question No. 5." Read in conjunction with this conditioning language, the only logical interpretation of the reference in Question 5 to "the negligence" of Orkin is that it refers to the negligence found by the jury *in Question 1,* i.e., that which caused actual damage to Williamson. In addition, there is no pleading or evidence that Orkin was consciously indifferent to *Williamson's* safety in its allegedly improper disposal of the contaminated soil, and we believe it highly unlikely that the jury would have considered this conduct as the basis for its finding of gross negligence. The better practice may be to phrase a gross negligence question in terms that expressly instruct the jury to consider only such acts as it has already found to have been negligent and a proximate cause of harm. However, under the circumstances of the present case, we are unable to conclude

that the failure to include such an instruction probably caused the rendition of an improper judgment. Therefore, any error in the charge was harmless. We overrule Orkin's eighth point of error.

The judgment of the trial court is affirmed.