Lydia RAMIREZ, et al., Appellants,

v.

VOLKSWAGEN OF AMERICA, INC., Appellee.

No. 13-88-577-CV.

Court of Appeals of Texas, Corpus Christi.

April 19, 1990.

Rehearing Overruled May 17, 1990.

George P. Powell, Hinojosa & Powell, McAllen, for appellants.

Charles W. Hury, Atlas & Hall, McAllen, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a suit against Volkswagen of America, Inc., (Volkswagen) and the estate of Santana Martinez for which appellants sought recovery for personal injury and wrongful death. The suit arose from an automobile collision in which Felix Ramirez, Jr., Arturo Ramirez and Christopher Lyon Wilson were killed when the Volkswagen van occupied by them collided with a vehicle driven by Santana Martinez. Appellants, the surviving family members of the decedents, sued Volkswagen alleging strict liability and common law negligence concerning defects in the design, marketing and manufacture of the Volkswagen van. The jury answers on issues of liability were favorable to Volkswagen although the jury found damages in the amount of $1,450,000.00. The judge entered judgment that Ramirez take nothing against Volkswagen. Ramirez appeals. We affirm.

The evidence shows that on the night of August 20, 1982, a Ford Grand Torino, driven by Santana Martinez, skidded sideways around a highway curve and was broadsided by a Volkswagen van driven by Arturo Ramirez. The impact cut the Torino into two pieces. Santana Martinez died at the scene. The van's front seat passenger, Felix Ramirez, Jr., was alive and trapped inside the van. Passersby tried to extricate him from the van but a fire inside the van prevented them. He died at the scene along with the van's driver and another one of its passengers, Christopher Lyon Wilson. The van's fourth passenger, Jason Ramirez, was thrown from the van and survived the crash.

■ By their first point of error, appellants allege that the trial court submitted an erroneous charge to the jury. The complained-of charge reads as follows:

A product is not in a defective condition, thus not unreasonably dangerous when sold, when the unreasonably dangerous condition is caused by a substantial change or alteration of the product after it is sold, and but for which unreasonably dangerous condition the event would not have occurred. Substantial change or alteration means that the configuration or operational characteristics of the product are changed or altered by affirmative conduct of some person in a

manner that the defendant could not have reasonably foreseen would occur in the intended or foreseeable use of the product. Substantial change or alteration does not include reasonably foreseeable wear and tear or deterioration.

We note that this instruction tracks the instruction given in 3 State Bar of Texas, Texas Pattern Jury Charges PJC 70.05 (1982). According to *PJC* 70.05, when the elements of substantial change or alteration are raised by the evidence, an instruction on these elements should be submitted following the definition of "unreasonably dangerous." *Federal Pacific Electric Co. v. Woodend,* 735 S.W.2d 887, 892 (Tex.App.—Fort Worth 1987, no writ); *see also Woods v. Crane Carrier Co., Inc.,* 693 S.W.2d 377, 379–80 (Tex.1985) and *Caterpillar Tractor Co. v. Gonzales,* 599 S.W.2d 633, 636–37 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.).

Appellants contend this instruction is both defective and erroneous in a products liability case, particularly a design defect case. They also argue that this instruction amounts to a comment on the weight of the evidence, that it is superfluous, that it tends to distract the jurors' attention from the issue at hand and that it is not supported by the evidence. At trial, however, appellants objected to the submission of this instruction on the grounds that it was superfluous, and they also objected that they were not allowed to give rebuttal testimony.

New or different objections to a charge cannot be raised for the first time in a motion for new trial or *on appeal. Champion v. Wright,* 740 S.W.2d 848, 856–57 (Tex.App.—San Antonio 1987, writ denied); Tex.R.Civ.P. 274. In the instant case, the only argument preserved for our review pertains to the instruction being superfluous. The evidence shows that Arturo Ramirez, the van's driver, earned his living as a traveling photographer. In order to store his photographic supplies, he removed the van's middle seat and built in its place a large wooden box covering the entire area between the van's front and rear seats. He stored a locker on top of the wooden box. He also stored inside the van a photographic backdrop, numerous photographic props, a camera and fishing equipment. Volkswagen's witness, Leslie Warren Parr, testified that the van in question included a Y-shaped frame and other design features that receive impact and transfer this energy to other parts of the van. This stabilizes the passenger compartment during a collision. Nevertheless, when the van collided with the Grand Torino, the forward movement of the unsecured cargo and the wooden box hampered the designed operation of this crash control system. We find that the evidence was sufficient to support the submission of the instruction.

■ By their second point of error, appellants complain the trial court erred by limiting the testimony of their expert witnesses, Michael Pish and Jerry Wallingford. In order to address this point of error, we must explain the procedural history involved.

On October 19, 1984, Volkswagen forwarded interrogatories to appellants. By interrogatory number one, Volkswagen requested appellants to: (1) provide the identity of their expert witnesses; (2) provide the subject matter upon which their expert witnesses might testify; (3) acknowledge whether these experts have rendered written reports; (4) assuming experts have rendered written reports, state verbatim the contents of the expert's report or provide a copy; and (5) state the opinions that the expert holds with regard to the subject matter upon which he may testify and the factual basis for the opinion. On February 19, 1985, appellants filed their answers to these interrogatories, stating that they had not yet designated any expert witnesses. On June 6, 1986, Volkswagen filed a "MOTION TO COMPEL PLAINTIFFS' RESPONSE TO INTERROGATORY NO. 1." On September 3, 1986, a hearing was held on Volkswagen's motion to compel. As a result of this hearing, the trial court issued an order, dated September 3, 1986, indicating that appellants agreed to fully and completely respond on or before September 15, 1986, to interrogatory number one and to provide written reports from all expert

witnesses designated in such responses. The trial court also ordered appellants to fully and completely respond on or before September 15, 1986, to this interrogatory by providing "a written report from each such expert witness fully and completely setting forth mental impressions and opinions held by the expert and the facts known to the expert (regardless of when or how the factual information was required) which would relate to or form the basis of such mental impressions and opinions."

On September 17, 1986, Volkswagen received reports from appellants' experts, Michael Pish and Jerry Wallingford. On September 24, 1986, Volkswagen filed its "MOTION FOR SANCTIONS," complaining that Pish's and Wallingford's reports did not satisfy the trial court's September 3, 1986 order.

On December 12, 1986, the trial court entertained Volkswagen's "MOTION FOR SANCTIONS," and by order of December 17, 1986, the trial court found that appellants failed to fully and adequately comply with its September 3, 1986 order. The trial court gave appellants until December 23, 1986 to respond to the September 3, 1986 order. On December 23, 1986, a compliance hearing was held. By order of April 14, 1987, the trial court ordered, in pertinent part, that appellants use only Pish and Wallingford as expert witnesses, and that the trial testimony of Pish and Wallingford be limited to and shall not go beyond or include any matters not contained in Pish's and Wallingford's depositions taken by Volkswagen as herein provided.

Appellants argue that the trial court's sanctions constitute an abuse of discretion. We disagree. The text of Tex.R.Civ.P. 215(5) states as follows:

5. Failure to Respond to or Supplement Discovery. A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

The record does not indicate that appellants ever supplied Volkswagen with the reports as ordered by the trial court. Thus, absent a finding of good cause, the trial court did not err by preventing appellant's experts, Pish and Wallingford, from testifying beyond matters contained in their earlier depositions taken by Volkswagen. *See Clark v. Trailways, Inc.*, 774 S.W.2d 644, 646 (Tex.1989); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). A showing of good cause pursuant to rule 215(5) must encompass a showing of good cause for the offering party's failure to respond to proper discovery requests. *Clark*, 774 S.W.2d at 646. Determination of good cause is within the trial court's sound discretion, and that determination will only be set aside if the trial court abused its discretion. *Morrow*, 714 S.W.2d at 298.

In determining whether there was an abuse of discretion, we must ascertain whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986), our Supreme Court stated that a trial court abuses its discretion if the sanction imposed does not further one of the purposes that the discovery sanctions were intended to further. These purposes are: (1) to secure the party's compliance with the rules of discovery; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties that violate the rules.

In the instant case, appellants failed to comply with the trial court's September 3, 1986 order. Even when the trial court extended the compliance deadline to December 23, 1986, appellants still failed to comply. Appellants ignored well-established discovery rules when they neglected to fully and completely disclose the substance of Pish's and Wallingford's testimo-

ny. *E. F. Hutton, Co., Inc. v. Young-blood,* 741 S.W.2d 363, 364 (Tex.1987); *Morrow,* 714 S.W.2d at 297; *Gandara v. Novasad,* 752 S.W.2d 740, 742 (Tex.App.— Corpus Christi 1988, no writ). Appellants were on notice of the Texas Rules of Civil Procedure (Rule 166b) which sets forth procedures governing the form and scope of pre-trial discovery. The purpose is full and complete discovery to avoid gamesmanship and trial by ambush. *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex.1987).

Appellants argue that no evidence exists to support Volkswagen's "MOTION FOR SANCTIONS." Our appellate rules, however, dictate that the burden is on the appellant, or other party seeking review, to see that a sufficient record is presented to show error requiring reversal. Tex.R. App.P. 50(d). We cannot locate in the appellate record a transcript of the hearing on the "MOTION FOR SANCTIONS"; there is no finding of good cause made in the record; we therefore conclude that the sanctions imposed by the trial court were permissible under the Rules and well within the court's discretionary powers.

By their third point of error, appellants complain the trial court erred by limiting the rebuttal testimony of their expert witnesses, Michael Pish and Jerry Wallingford, to matters covered in their depositions. In their appellate brief, appellants refer us to two sections in the record where the trial court allegedly restricted Pish's and Wallingford's testimony in this manner. These sections, however, refer only to the limitation placed on Pish's rebuttal testimony.

In our disposition of point two, we noted that a failure to properly supplement discovery results in the loss of the opportunity to offer the expert's testimony. The sanction is automatic. The exception is when good cause is shown why the testimony should be allowed in spite of the discovery sanction. *Morrow,* 714 S.W.2d at 297. In the instant case, the April 14, 1987 order clearly limits Pish's testimony to matters covered in his deposition. No evidence was offered to show good cause, and there is no showing of an abuse of discretion.

We hold that the trial court did not err in limiting Pish's rebuttal testimony to matters covered in his deposition. *See* Tex.R. Civ.P. 166b.

By their fourth point of error, appellants complain that the trial court erred by excluding rebuttal testimony of their expert witness, Michael Pish, to matters regarding electrical fires. On direct examination, appellants' counsel referred Pish to an electrical cable running from the van's battery to its starter and continuing to other parts of the van. Counsel told Pish that previous testimony indicated that a short occurred where the electrical cable split. Counsel then asked Pish if he was familiar with the term "soft short." At this point, outside the jury's presence, the trial judge allowed Volkswagen to question Pish on voir dire. Upon completing its voir dire, Volkswagen asked the trial court to disallow Pish from testifying about anything involving the van's electrical system. After hearing argument, the trial court limited Pish's testimony to *matters covered in his deposition.* In his deposition, Pish did not testify about matters regarding electrical fires. As such, the trial court did not err by preventing Pish from delivering rebuttal testimony about matters regarding electrical fires.

By their fifth point of error, appellants argue the trial court erred in admitting the deposition testimony of Jesus and Pablo Martinez. In their brief, appellants state that they filed a motion in limine, requesting that Volkswagen not be allowed to present evidence concerning behavior of the driver of the Ford vehicle prior to the collision (Santana Martinez was the driver of the Ford Grand Torino that collided with the Volkswagen van). Appellants allege that "[t]he Court granted the motion except as to events immediately prior to the accident."

The record reflects that on June 6, 1988, appellants filed a "MOTION IN LIMINE" to prevent Volkswagen from offering any evidence concerning the past record or activities of Santana Martinez. No order is attached to this motion, and appellants do not refer us to a location in the record

detailing the trial court's ruling. Therefore, we will base our analysis on the Court's ruling made during trial.

Witnesses testified that minutes before they discovered the collision between the Ford Grand Torino and the Volkswagen van, Santana Martinez passed them at speeds ranging from eighty to ninety miles per hour. Appellant's expert, Jerry Wallingford, testified that he did not determine the impact (closing) velocities of the Volkswagen van and the Ford Grand Torino. Wallingford did say, however, that this was a "moderate impact." On the other hand, Volkswagen's expert, Jose Martinez, testified that the vehicles collided at a closing speed of over 110 miles per hour. Volkswagen's other expert, Arnold Siegel, testified that the closing speed was between 110 and 120 miles per hour.

Volkswagen asked the trial court to allow Jesus and Pablo Martinez to testify concerning Santana Martinez' conduct immediately before the collision. Volkswagen argued that Santana Martinez' conduct prior to the collision would show his motive for maintaining his high rate of speed until the time he collided with the van. Volkswagen also argued that Santana Martinez' conduct is relevant to establish an impact speed at the time of the collision. The trial court allowed Pablo and Jesus Martinez to testify "concerning the way he [Santana Martinez] was driving or going to drive."

Jesus Martinez testified that the night Santana Martinez collided with the Volkswagen van, he saw him drinking at a bar. While at this bar, Santana Martinez got into a fight. Pablo Martinez, the bar's owner, testified that he escorted Santana out of the bar. He told Santana Martinez that he was calling the police, and Santana left in his car.

Appellants voiced no objections when Pablo and Jesus Martinez' testimony was read into the record. In Texas, evidence is relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Civ.Evid. 401.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R.Civ.Evid. 403. Santana Martinez' conduct at the bar, along with his knowledge that the police had been called, tends to establish his motive and state of mind for maintaining his high rate of speed until he collided with the Volkswagen van. This evidence was clearly critical to support Volkswagen's contention that the vehicles collided at a closing speed ranging from 110 to 120 miles per hour. The evidence was relevant and its probative value outweighed any prejudice to appellants.

By their sixth point of error, appellants complain the trial court erred by admitting into evidence Exhibits 54 and 55 because they were not produced within the required time period in response to appellants' request for production. During trial, Volkswagen offered into evidence Exhibits 54 and 55, video versions of a sixteen millimeter movie depicting the collision. At this point, an off the record discussion occurred. Afterwards, appellants' counsel objected: "Your Honor, I'm not waiving the objections I made the other day, so I will object to that being admitted."

Our appellate rules clearly state that in order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the *specific grounds* for the ruling he desired the court to make if the specific grounds were not apparent from the context. Tex.R.App.P. 52(a). Appellants' objection does not state the specific grounds for the ruling they desired the trial court to make, and the specific grounds are not apparent from the context. Nothing is preserved for our review.

By their seventh point of error, appellants complain the trial court erred by admitting Exhibit No. 89 into evidence because it was not produced within the required time in response to appellants' request for production. On April 7, 1988,

appellants served Volkswagen with a request for production. The items requested are as follows:

> All written or other documentation, photographs and reports including, but not limited to, documentation of testing, factual observations, tests, supporting data and calculations of the area, persons and or vehicle and objects involved, either made before, at the time of or after the time of the events in question in your possession and/or in the possession of your experts.

This document states that Volkswagen must comply by serving a written response and tendering said item to the undersigned attorneys within thirty days after the receipt of the request.

During trial, Volkswagen offered into evidence Exhibit No. 89 which contains laboratory tests of the burnable components within the passenger compartment of a Volkswagen Type 2 vehicle. These tests were conducted at the Volkswagen Lab in the Hanover, Germany factory. Appellants objected to the admission of Exhibit No. 89 on the ground that their request for production asked for copies of all the tests concerning the vehicle involved. Appellants stated that they were not provided with this material within thirty days.

Appellants' request for production was limited to "tests ... of the ... *vehicle ... involved.*" (Emphasis added). Exhibit 89 contains laboratory tests of burnable components within the passenger compartment of a Volkswagen Type 2 vehicle. This exhibit did not include data resulting from tests performed on the specific Volkswagen van involved in the collision. Appellants did not later expand their request for production by demanding data resulting from tests performed on Volkswagen vans generally of the same make or model as the one involved herein. Their request limited itself to the vehicle "involved." Point of error number seven is overruled.

By their eighth point of error, appellants argue the trial court erred by refusing to admit the rebuttal testimony of Linda Ramirez, Lydia Ramirez, Arturo Chamberlain, Jerry Wallingford, Michael Pish, Aubin Martinez and Armando Alonzo. Volkswagen's interrogatory number two, served upon appellants on October 19, 1984, requested them to "identify all persons known to you, your attorney or other agent having knowledge of relevant facts." Volkswagen requested that this interrogatory be answered within thirty days of the service date. Appellants listed these persons as Joel Leal and an unnamed paralegal employed by attorney Richard Arroyo. On May 27, 1988, Volkswagen filed its "SECOND AMENDED ORIGINAL ANSWER," stating, in relevant part, that if the van in question was unreasonably dangerous, this condition resulted from substantial change or alteration by someone other than Volkswagen.

During trial, appellants attempted to offer the testimony of Arturo Chamberlain, Aubin Martinez and Armando Alonzo. Appellants argued to the trial court that Rolando Garcia (a Department of Public Safety officer who investigated the subject collision) gave a deposition on June 2, 1988 stating that he found a lantern and a fuel can in the collision debris. Appellants told the trial court that on June 3, based on this information, they designated Arturo Chamberlain as a witness. Appellants also argued that based on Officer Garcia's statement and information received in Jesse Sosa's deposition, they became aware of the need for the testimony of Aubin Martinez and Armando Alonzo. The trial court did not allow these witnesses to testify because appellants failed to designate them thirty days prior to trial.

Rule 166b(2)(d) states, in pertinent part, that "[a] party may obtain discovery of the identity and location (name, address, and telephone number) of any potential party and of persons *having knowledge of relevant facts.*" (Emphasis added). A party's failure to supplement a request for discovery at least thirty days before trial automatically results in the loss of the opportunity to offer the witness' testimony unless the trial court finds good cause sufficient to require its admission. *See Clark,* 774 S.W.2d at 646; *Morrow,* 714 S.W.2d at 297. In *Gannett Outdoor Co. v. Kubecz-*

*ka,* 710 S.W.2d 79, 84 (Tex.App.—Houston [14th Dist.] 1986, no writ), the court of appeals held that a rebuttal witness need not be disclosed where the use of such witness could not be anticipated prior to trial, and whose exclusion would keep important testimony from the jury. The *Gannett* Court found that the testimony of the plaintiff's rebuttal witness became necessary to refute surprise false testimony given by the defendant.

The depositions of Rolando Garcia and Jesse Sosa and appellants' supplement to interrogatory number two which allegedly designated Arturo Chamberlain as a witness are not included in the record before us. They are critical to appellants' showing of good cause why Chamberlain, Martinez and Alonzo should be allowed to testify. Our appellate rules dictate that the appellant, or other party seeking review, has the burden to see that a sufficient record is presented to show error requiring reversal. Tex.R.App.P. 50(d). The trial court did not abuse its discretion in denying the rebuttal testimony of these three witnesses.

■ Appellants also attempted to offer the testimony of Lydia and Linda Ramirez. Lydia, the former wife of Felix Ramirez, Jr., testified in a bill of exceptions that a Coleman lantern could not have been found at the collision scene because the lantern was at her father-in-law's house. Linda, the former wife of Arturo Ramirez, testified in a bill of exceptions that at the time of the collision, Arturo's lantern could not have been at the collision scene. Volkswagen argued that this testimony only bolsters appellants' case and is not rebuttal testimony. The trial court sustained the objection.

Even though Rolando Garcia testified during trial that he found a lantern and a one gallon can resembling a fuel can in the van's burned debris, appellants fail to point out where in the record Volkswagen alleged that the lantern or can belonged to either Arturo Ramirez or Felix Ramirez, Jr. The fact that a lantern and a one gallon can were found at the scene does not mean these items belonged to either Arturo Ramirez or Felix Ramiriz, Jr. We fail to see how Lydia and Linda Ramirez' testimony amounts to rebuttal testimony. The trial court did not abuse its discretion by excluding this testimony.

Regarding the rebuttal testimony of appellants' expert witnesses, Jerry Wallingford and Michael Pish, appellants fail to propound any argument showing how the trial court erred by refusing to admit their rebuttal testimony. Nevertheless, we have reviewed the testimony of Pish contained in appellants' bill of exceptions. This testimony does not relate to substantial change or alteration of the Volkswagen van. There was no bill of exceptions containing Wallingford's testimony in the record before us. We conclude the trial court did not abuse its discretion by refusing to admit such rebuttal testimony. We overrule all of appellants' points of error.

The judgment of the trial court is AFFIRMED.

BENAVIDES, J., concurring.

BENAVIDES, Justice, concurring.

I write separately because I disagree with certain majority findings relating to the eighth point of error. The majority finds that because appellants failed to present in the record on appeal certain depositions and documents, that they cannot show good cause, and that such matters (the depositions and documents) are critical to a determination of good cause. I would not determine the point of error on such grounds of waiver. However, I agree that the point of error should be overruled as I do not believe the trial court abused its discretion.

The majority determines that because the depositions and the supplementary answers to interrogatories are not in the record, they cannot properly review whether good cause was shown and implicitly finds the appellants' point fails because the appellants did not present such documents in the record on appeal. In my view, the depositions and the supplementary answers to interrogatories are unnecessary to a review of the trial judge's determination. In

determining whether the trial court abused its discretion, we review whether the trial court acted without reference to the guiding rules and principles regarding a determination of good cause. *See Morrow v. H.E.B.*, 714 S.W.2d at 298. Whether the trial judge properly determined that good cause was not shown can be determined by examining the testimony of the attorneys at the hearing on good cause in light of the principles and rules determining good cause.

A showing of good cause is two-part. First, a showing of good cause to permit testimony must encompass a showing of good cause for the offering party's failure to timely respond to proper discovery requests. *Clark v. Trailways, Inc.*, 774 S.W.2d at 646; *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.*, 701 S.W.2d 243, 246 (Tex.1985); *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 877 (Tex.App.—Corpus Christi 1988, writ denied). When a witness's knowledge of relevant facts is first established through matters discovered and developed during trial, the failure to timely supplement answers to interrogatories is justified. *See Tinkle v. Henderson*, 777 S.W.2d 537, 540 (Tex.App.—Tyler 1989, no writ).

On the other hand, where a party is aware of the name of an individual and should have reason to believe that the person had knowledge of relevant facts, but does not contact that person until immediately before trial to determine whether they do have knowledge of relevant facts, there must be a showing of a good faith effort to locate the person or a showing of the party's inability to anticipate the use of the witness's testimony at trial in order to show good cause. *Clark*, 774 S.W.2d at 647; *see also Yeldell*, 701 S.W.2d at 246–47.

Second, good cause must be established for allowing the testimony. *See Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989); *E. F. Hutton & Co., Inc. v. Youngblood*, 741 S.W.2d 363, 364 (Tex.1987). When a witness is offered as a rebuttal witness, there is good cause to allow his testimony if the witness's use as a rebuttal witness could not be anticipated prior to the testimony given *at trial*. (Emphasis added). *Gannett Outdoor Co. of Texas v. Kubeczka*, 710 S.W.2d 79, 84 (Tex.App.—Houston [14th Dist.] 1986, no writ); *see also Tinkle*, 777 S.W.2d at 540.

At the hearing on good cause, which was held after the defense rested, appellant's attorney stated that he designated Chamberlain as a witness to rebut the testimony that was given by Roland Garcia at trial and at deposition before trial. Appellant's attorney took Garcia's deposition during the week before trial despite knowing about him and his knowledge of relevant facts for two years. Although appellant's attorney supplemented his answers to interrogatories immediately upon discovering Chamberlain's apparent knowledge of relevant facts, he would have known of Chamberlain's potential knowledge well in advance of trial had he made a good faith effort to locate Garcia. Hence, he could have supplemented the answers to the interrogatories in a timely manner. Further, according to appellant's attorney, the need for Chamberlain's testimony did not arise only from testimony given at trial; the need for Chamberlain to rebut testimony became apparent before trial, during Garcia's deposition.

Here, the actual statements which Chamberlain was to rebut are irrelevant to his late designation as a witness or the pretrial realization of the need for his rebuttal testimony. The majority is incorrect that the deposition was "critical to appellants' showing of good cause...." I am unwilling to agree that appellants needed to provide Garcia's deposition as part of the record; the determination that appellants had failed to show good cause was properly made and is reviewable without the deposition.

During the week before trial, appellants' attorney also designated Martinez and Alonzo as witnesses. According to appellants' attorney, he knew about these two individuals, who were related to his clients by marriage, and their possible knowledge of relevant facts and the need for their rebuttal testimony before trial. Appel-

lants' attorney knew of Martinez and Alonzo and did not designate them as individuals with knowledge of relevant facts until it was too late for his opponent to take their depositions. Counsel showed no good cause for his failure to timely designate Martinez and Alonzo as witnesses, nor did he show good cause to admit their testimony. The trial judge did not abuse his discretion, and therefore, properly excluded Alonzo and Martinez.

As with Chamberlain, appellants' attorney referred to Rene Sosa's deposition as the pre-trial source of the information requiring rebuttal. As before, the actual statements which Martinez and Alonzo were to rebut are irrelevant to their late designation as a witnesses or to the pre-trial realization of the need for the rebuttal testimony. Again, I cannot agree with the majority that the deposition was "critical to appellants' showing of good cause...." I am unwilling to agree that Sosa's deposition is necessary to our review of whether appellants established good cause.

Further, I fail to see why the supplementary answers to the interrogatories are "critical to appellants' showing of good cause," much less necessary at all. At the hearing on the issue of good cause, it was undisputed by the attorneys for each party that the designations of these additional witnesses were not made until during the week before trial.

Undisputed statements of the attorneys made during a hearing on good cause do not need to be corroborated with documentary evidence. To require corroborating evidence, either in the form of depositions or other discovery or documents would make the hearing on good cause unduly burdensome. Attorneys are officers of the court and the trial court can consider their testimony, as can this court, without corroborating evidence. As a practical matter, trial attorneys, because of their knowledge of the history of the case and the particular development of the facts of each case before trial, are ordinarily in the best position to relate the circumstances that would justify or fail to justify a failure to timely designate witnesses at a good cause

hearing. To require supporting documentation of their unchallenged representations regarding good cause would serve no purpose and would burden and complicate the trial proceedings as well as create an unnecessary obstacle to appellate review. I therefore disagree with the majority holding that in this case such documents are critical to a determination and the majority decision to overrule point of error eight because such are not included in the record before us. However, since I would find the trial court did not abuse its discretion, I agree with the majority decision overruling the appellants' eighth point of error and its decision affirming the judgment of the trial court.