**Karl E. NUTTING, III, et al.,**
**Appellants,**

v.

**NATIONAL HOMES MANUFACTUR-**
**ING COMPANY, Appellee.**

**No. 13415.**

Court of Appeals of Texas,
Austin.

Sept. 22, 1982.

respect.

J. Parker McCollough, Connor & McCollough, Georgetown, for appellants.

Geoffrey C. Price, Law Offices of Don L. Baker, Austin, for appellee.

Before PHILLIPS, C. J., and SHANNON and POWERS, JJ.

POWERS, Justice.

Appellee, National Homes Manufacturing Company, sued appellants, Karl E. Nutting, III, and Sunrise Construction Corporation for debt, in the amount of $1,483.42; for an "abuse of trust and fiduciary responsibilities," seeking $2,500.00 in exemplary or punitive damages; and for $900.00 as reasonable attorney's fees, evidently under the provisions of Tex.Rev.Civ.Stat.Ann. art. 2226 (1971).[1] Nutting and Sunrise Con-

---

1. Appellee's petition does not aver that it is a partnership or a corporation. Karl E. Nutting, III is designated in the petition as the "individual defendant." The petition alleges that Nutting is liable for the debt solely because the corporate defendant failed "to comply with various legal requirements pertaining to corporations...."

The petition purports to incorporate an attached affidavit, invoices and statements in an invocation of Tex.R.Civ.P.Ann. 185 (1976). Actually, there are attached to the petition photocopies of 21 invoices, three documents entitled "Report of Error & Credit Request," seven entitled "Invoice & Shipping Tally List," three entitled "Merchandising Tools Order Form," seven

struction Corporation appeared and answered by general denial and a special denial that each and every item in the sworn account alleged by appellee was not just or true, their pleading being verified by an affidavit attached thereto.

During the course of the trial-court proceedings, appellee served written interrogatories upon appellants, which they failed to answer. Appellee moved the trial court to order appellants to serve answers to the interrogatories. The trial court, finding no substantial justification for appellants' failure, entered an order on April 17, 1980, directing appellants to serve their answers within ten days and awarding appellee $150.00 in attorney's fees for obtaining the order. The order concludes with the following paragraph:

> In the event [appellants] shall fail to serve such answers as ordered and fail to file a copy with this court, judgment by default as prayed for [in appellee's motion to compel answers to the interrogatories] together with attorney's fees as specified [$150.00] shall be entered forthwith.

Appellants failed to comply with the foregoing order. For such disobedience, the trial court on June 11, 1980, rendered judgment against them, jointly and severally, "in the total sum of $3,533.42, which includes Plaintiff's [appellee's] principal claim, statutory interest to date, exemplary damages of $1,000.00 and reasonable attorney's fees of $1,050.00, together with interest thereon from date of judgment at the rate of nine percent (9%) per annum until paid . . . ."

Appellants were not given notice of the trial court judgment. They filed, on November 13, 1980, their petition for writ of error which we now consider.

■ Appellants contend in their first point of error that the trial court abused its discretion when it imposed a default judgment, the most severe sanction authorized for a defendant's disobedience of a discovery order. Tex.R.Civ.P.Ann. 215a, 170(c) (1976). We disagree. The record reflects a conscious indifference on appellants' part regarding the requirements of the discovery rules and the trial court's order. We overrule the point of error.

Appellants' second point of error raises a question of the proper interpretation of rules 215a and 170, *supra*. They contend that a default judgment, when rendered by the trial court as a sanction for a defendant's failure to comply with a discovery order, must nevertheless be supported by the introduction of evidence. Judicially admitting that no evidence was introduced in the trial court, as a basis for its judgment, appellee replies that none was required for two reasons: (1) the claims alleged in its petition were all liquidated demands; and (2) the trial court judgment, when entered as a discovery sanction under rules 215a and 170(a), results by operation of law on the theory that the information withheld by the disobedient defendant would have supported judgment for any amounts within those alleged in the plaintiff's petition.

■ The claims alleged in appellee's petition are quite clearly *not* liquidated claims. The claim for debt was alleged in the form of a sworn account, verified by appellee to be the net amount owing as a

entitled "Plan Order Form," two copies of correspondence, and one each of documents having the following titles: "Change Order to Builder's Order," "Standard Order Form," "Shipping Order," "Answers to Report of Error," and "Remittance Advice." There are also copies of the following: a promissory note in the amount of $9,238.62 in favor of appellee, executed by appellants as makers; a cashier's check in the amount of $29,680.59 payable jointly to appellee and "Sunrise Construction;" a "bill" in the amount of $30.00 from an unspecified supplier; and a sales slip from

Georgetown Lumber & Hardware Co. in the amount of $8.85 for plywood sold to "Karl Nutting." We are unable to reconcile these various documents so as to produce the amount of debt sued for by appellee, that is, $1,483.42. Appellee's petition attempts no reconciliation showing how the various documents produce the sum of $1,483.42 as the net sum claimed by appellee to be owing as a result of transactions between the parties. *See, Haecker v. Santa Rosa Medical Center*, 609 S.W.2d 879 (Tex.Civ.App.1980, no writ), and cases cited therein.

result of a sale or sales of materials at a "stated price . . ., which was a usual and customary, reasonable and fair price." The petition avers in this respect only an open, mutual and current account and not a stated account, upon the net balance of which the parties have allegedly agreed. *Dwight v. Matthews,* 94 Tex. 533, 62 S.W. 1052, 1053 (1901). So much is plain from the very words used by appellee to describe its claim for debt. The prima facie character of appellee's claim for debt, resulting from the series of transactions between the parties, was neutralized by appellants' verified denial. Tex.R.Civ.P.Ann. 185 (1976); *Risk v. Financial Guardian Insurance Agency, Inc.,* 584 S.W.2d 860, 862 (Tex.1979). We turn then to appellee's claim for exemplary damages. While we are not able to characterize appellee's claim for exemplary damages with certainty, owing to the indefiniteness of the pleading, it appears to allege that appellants received from third persons a sum required to be paid over to appellee in discharge of the debt; and that appellants failed, in breach of a fiduciary duty, to remit that sum to appellee. We may say with certainty, however, that the claim for exemplary damages must depend upon appellee's establishing its claim for the principal sum of its debt, for otherwise no exemplary damages were recoverable, depending as they do upon an award of actual damages. *City Products Corporation v. Berman,* 610 S.W.2d 446, 450 (Tex.1980). The *amount* of exemplary damages depends, in turn, upon the facts of each particular case and a correlation of certain well-recognized factors, one of which is the maintenance of a reasonable proportion between the respective amounts of actual and exemplary damages. *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). Therefore, appellee's two claims, as defined and measured by its own allegations, were manifestly *not* liquidated demands for they were contingent in amount, if not in liability, and within the discretion of the trier of fact to find. *Cleveland v. San Antonio Building and Loan Association,* 148 Tex. 211, 223 S.W.2d 226, 228 (1949).

 The question remains whether the trial court could enter judgment against the disobedient appellants in amounts which were, although arbitrary, within the sums pleaded by the appellee, on a theory that the law presumes that the information withheld by appellants from discovery would have supported the amounts awarded in the trial court judgment. We reject the theory.

Rule 215a(b) authorized the trial court to consider appellants' refusal to comply with the court's order as an instance of contempt of court; or the court was authorized by that rule to "make such orders in regard to the refusal as are just, and among others, those permitted by Rule 170." The trial court chose to award a "default" judgment against appellants, as specifically permitted by subsection (c) of rule 170. The various sanctions authorized by rule 170 are plainly independent of each other and contemplate varying degrees of severity. We note, for example, that the trial court did not order that appellants' answer be stricken. That being so, the present case falls within that category of post-answer "default" judgments described in *Stoner v. Thompson,* 578 S.W.2d 679, 682 (Tex.1979):

> A post-answer "default" constitutes neither an abandonment of defendant's answer nor an implied confession of any issues thus joined by the defendant's answer. Judgment cannot be entered on the pleadings, but the plaintiff in such a case must offer evidence and prove his case as in a judgment upon a trial.

We therefore grant writ of error, reverse the judgment of the trial court, hold its judgment void, and remand the cause to that court for further proceedings not inconsistent with this opinion.

PHILLIPS, C. J., not participating.