**WELEX, A DIVISION OF HALLIBURTON COMPANY, Appellant,**

v.

**Jerry Wayne BROOM, Appellee.**

**No. 04–89–00377–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 16, 1991.

Rehearing Denied March 22, 1991.

Marie R. Yeates, Penelope E. Nicholson, R. Glen Rigby, Eva C. Ramos, Vinson & Elkins, Houston, M.W. Meredith, Jr., Meredith, Donnell & Abernathy, Corpus Christi, William Powers, Jr., Austin, for appellant.

Arnulfo Gonzalez, Jr., Laredo, Russell H. McMains, Kimberly Hall Seger, McMains & Constant, Corpus Christi, for appellee.

Before CADENA,* C.J., and CHAPA and BIERY, JJ.

## OPINION

CHAPA, Justice.

This is an appeal from a judgment entered against appellant Welex, a Division of Halliburton Company. Appellee, Jerry Wayne Broom (hereinafter "Broom") brought a negligence action against Welex and Transamerican Natural Gas. Prior to trial, and in addition to other sanctions for discovery abuse, Welex was defaulted on liability. Transamerican settled with the appellee. At trial, evidence was heard on damages and on the comparative negligence of Broom, Transamerican and appellant. A jury found Broom not negligent, allocated comparative negligence at 1% on Transamerican and 99% on Welex, and awarded Broom over $2 million for his injuries.

The dispositive issues before us are:

1). whether the trial court committed reversible error in sanctioning appellant for discovery abuses, including defaulting appellant on liability;

2). whether the trial court committed reversible error in allowing appellee to present evidence in order to obtain a jury finding on comparative fault, while preventing Welex from presenting evidence preserved in Welex's bills of exceptions;

3). whether the trial court committed reversible error in overruling objections made by Welex during Broom's closing argument, and in subsequently refusing to grant Welex's Motion for New Trial;

4). whether the trial court committed reversible error in refusing to grant Welex's Motion for New Trial, Motion for Judgment Non Obstante Veredicto and Welex's request for remittitur, and further, in allowing Broom to amend his pleadings to reflect an increase in damages awarded by the jury because the evidence was factually and legally insufficient to support the jury's findings as to liability and damages;

5). whether the trial court committed reversible error in failing to reduce Broom's recovery by the amount that Transamerican paid Broom in settlement;

6). whether the trial court committed reversible error in refusing to allow Welex to make its bills of exceptions on the excluded testimony of Gonzalez and Anderson before the jury was charged; and

7). whether the trial court committed reversible error in ordering that pleadings and other papers received for Webb County would be treated as if filed with Zapata County, and in ordering that certain papers found at trial not bearing a "filed" stamp or a "received" stamp would be treated as if filed.

* Carlos C. Cadena, Chief Justice (Retired), concurred with results before retiring.

In a brief lacking citations to authority, appellant contends in its first point of error that the trial court committed reversible error in imposing a default sanction, pursuant to rule 215, as to liability for alleged discovery abuses. We note that the standard of review applicable in our analysis of appellant's contentions is whether the trial court abused its discretion.

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–43 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984). Rather, a trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Downer*, 701 S.W.2d at 241–43; *Cessna Aircraft*, 665 S.W.2d at 443; *Bush v. Vela*, 535 S.W.2d 803, 805 (Tex.Civ.App.—Corpus Christi 1976, no writ); *King v. Guerra*, 1 S.W.2d 373, 376 (Tex.Civ.App.—San Antonio 1927, writ ref'd). In ascertaining whether the trial court abused its discretion, the reviewing court must determine if the trial court acted without reference to any guiding rules and principles. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). The trial court is free, however, to consider the entire record of the case up to and including the motion to be considered. *Id.* at 241. Thus, the trial court is not limited to considering only the specific violation committed but is entitled to consider other matters which have occurred during the litigation. *Id.* We emphasize, moreover, that the burden is on appellant to see that a sufficient record is presented to show error requiring reversal. TEX.R.APP.P. 50(d). The reason for granting the default sanction in the present case was not given in the order. Unless the judgment or order limits or explicitly states the basis on which the order is given, this court must look to all the arguments before the court to determine if the court acted without justification. *Brasher v. Carr*, 743 S.W.2d 674, 683 (Tex. App.—Houston [14th Dist.] 1987), *rev'd on other grounds*, 776 S.W.2d 567 (Tex.1989).

The record reflects that suit was filed by appellee on March 5, 1987. On May 19, 1987, appellee sent its notice of intent to take the depositions of Van Hamilton and Roberto Martinez on July 2, 1987. The first discovery in the case took place on July 23, 1987, when four depositions were taken. Among the depositions taken on July 23rd was the deposition of Mr. Roberto Martinez, an employee of Welex. Mr. Martinez was partially deposed by appellee's attorney but the deposition was "recessed by agreement to be completed at a later date," because Martinez said that "he was just too tired and had put in a lot of work."

A pretrial conference was held on February 24, 1988. The agreed pretrial order provided, among other things: that discovery could continue until the day of trial; that appellee would provide a list of witnesses within forty-five (45) days before trial, and; that appellant would provide its list of witnesses within thirty (30) days before trial. The case was set for a trial date of October 11, 1988, with an alternative trial date of February 27, 1989. All attorneys later agreed to forgo the October 11, 1988 trial date.

On January 13, 1989, appellee noticed the depositions of various witnesses, including Martinez, for January 31st. Attached was a subpoena duces tecum requesting numerous documents, photographs, statements and reports that were "in the possession, constructive possession, custody or control of the Defendant, its attorney(s) or anyone acting on their behalf." Appellant's counsel, however, claimed that his offices did not receive notice of the scheduled deposition until January 16th. Appellant's counsel stated that the deposition notices were misplaced in his office and that, consequently, he omitted to produce his witnesses on the 31st.

Appellee further served its first set of interrogatories, its second set of interroga-

tories and a request for production on appellant. Included in the request for production were approximately thirty-eight (38) of the very requests described in appellee's subpoena duces tecum that was served on the proposed deponents scheduled for January 31, 1989.

On January 31, 1989, appellant filed a Motion for Protection alleging that "within six weeks of the trial date [appellee] has filed fourteen additional discovery documents, including extensive interrogatories ..., extensive Requests for Production ..." in addition to noticing numerous depositions. The motion was subsequently denied by the court.

On February 9, 1989, appellant filed its Second Motion for Protection and Motion for Sanctions, alleging that appellant had agreed that the three employees of appellant, Roberto Martinez, Ed Laycock and Walter Rouse, would be produced in the appellant's offices on February 8, 1989. Appellant argued that while the three employees had been produced, appellee's counsel refused to proceed with the deposition of Roberto Martinez after counsel learned that all of the documents described in appellee's notice of deposition had not been produced because Martinez "had no such documents, and had no possession, custody or control of such documents."

On February 10, 1989, appellee filed its Motion for Judgment by Default and Second Motion for Sanctions, arguing that appellee requested that appellant produce the documents identified in the subpoena duces tecum in order to properly take the deposition of Martinez but appellant refused to produce the records. Appellee's counsel argues that he began the deposition of Roberto Martinez but stopped when he learned that only Rouse had brought any documents sought pursuant to the subpoena duces tecum attached to the deposition notices. Counsel for appellant, however, refused to allow appellee's counsel to depose Rouse before Martinez' deposition was "completed."

On February 16, 1989, after all parties were duly noticed, a hearing on these motions was held, wherein all parties were present. Appellant contended that Martinez was not required to produce the subpoena duces tecum documents because they were not within Martinez's "possession, custody or control." After the hearing, the trial court granted appellee's Motion for Sanctions and granted a default judgment against Welex, thus limiting the trial to the issue of damages.

■ It is evident that the trial court considered many factors in deciding to impose the default sanction. Appellant primarily centers its argument on its failure to have its witnesses produce the documents requested by the subpoena. However, the court also considered the failure to produce the witnesses on other occasions, the refusal to allow the appellee to continue depositions [1] and the immediacy of the trial setting.

In a recent opinion, the Texas Supreme Court held that "the trial court [has] authority under the rules of civil procedure to make its pretrial orders and to sanction disobedience by striking pleadings and rendering [a] default judgment." *Koslow's v. Mackie*, 796 S.W.2d 700, 701 (Tex.1990). In *Koslow's*, the trial judge informed the parties, by letter, that a pre-trial joint status report was required and that the failure to submit this report would result in a disposition hearing, at which time cause would have to be shown why dismissal, default or other sanctions should not be imposed. *Id.* at 701. In spite of the fact that the defendants were not represented by counsel and had, in fact, filed a pro se answer and moreover, had alleged in their Motion for

---

**1.** Citing no authority to support its interpretation, appellant appears to argue that since TEX. R.CIV.P. 201(5) requires that "the witness shall remain in attendance from day to day until such deposition is begun and *completed*," appellant was justified in refusing to allow appellee to commence the deposition of the second witness without concluding the deposition of the first witness. (Emphasis added.) We decline to accept appellant's interpretation of this rule.

New Trial that they had not received notice of the disposition hearing until after the hearing, the trial judge struck the defendants' pleadings and rendered a default judgment against them when the defendants failed to submit a joint status report. *Id.* at 702. In affirming the trial court, the Texas Supreme Court noted that the striking of pleadings and the rendering of default judgments has been upheld in the following instances: "the failure to produce deponents, designate experts and produce documents ordered by the court" (*Vasquez v. Chem. Exch. Indus., Inc.*, 721 S.W.2d 284 (Tex.1986)); "a single instance of failure to attend depositions rescheduled by agreement, after non-appearance by a party at a deposition originally set by notice" (*Plano Sav. & Loan Ass'n v. Slavin*, 721 S.W.2d 282, 284 (Tex.1986)); "late and incomplete responses to discovery" filed "after the court has set deadlines, where the record fails to indicate any effort to comply with the court orders or any reason which would justify lack of diligence in responding" (*Jarrett v. Warhola*, 695 S.W.2d 8, 10 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd)), and; "[m]ultiple violations of the discovery rules and court orders relating to discovery ... even when the offending party offers justifications and excuses" (*Medical Protective Co. v. Glanz*, 721 S.W.2d 382, 388 (Tex.App.—Corpus Christi 1986, writ ref'd)).

■ Finally, the Texas Supreme Court has clearly stated that the purposes of discovery sanctions are to: (1) secure the parties' compliance with the rules of discovery; (2) deter other litigants from violating discovery rules; and (3) punish parties that violate rules of discovery. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). Further, as the Texas Supreme Court noted, a trial court abuses its discretion if the sanction it imposes does not further one of the foregoing purposes.

*Downer*, 701 S.W.2d at 242. The record before us does not indicate that the trial court was arbitrary or unreasonable. Therefore, we conclude that appellant has failed in its burden of establishing that the trial court abused its discretion in imposing the default sanction.

In it's second point of error, appellant argues that the trial court committed reversible error in allowing appellee to present evidence in order to obtain a jury finding on comparative fault, and additionally, in preventing Welex from presenting the evidence preserved in its bills of exceptions.

Appellant insists that since liability was established as a result of the default sanction, evidence relating to liability should have been precluded. In resolving this issue, we must carefully examine what evidence is properly admissible when a default judgment has been rendered against one of the parties.

It has long been established that once a default judgment is taken on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, *except* the amount of damages. *Stoner v. Thompson*, 578 S.W.2d 679, 684 (Tex.1979) (emphasis added); *Brantley v. Etter*, 662 S.W.2d 752, 758 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Nutting v. Nat'l Homes Mfg. Co.*, 639 S.W.2d 721, 723 (Tex. App.—Austin 1982, no writ). Therefore, the effect of a "no-answer" default judgment, has been held to be an admission of liability upon a cause of action if the action was properly alleged in the plaintiff's petition.[2] *See Southland Mower Co., Inc. v. Jordan*, 587 S.W.2d 215, 217 (Tex.Civ.App. —Fort Worth 1979, writ ref'd n.r.e.).

Accordingly, rule 243 of the Texas Rules of Civil Procedure provides the following:

If the cause of action is unliquidated or be not proved by an instrument in writ-

---

**2.** While the present case involves a "post-answer" default judgment rather than a "no-answer" default judgment, the Texas Supreme Court has stated, "... in measuring the sufficiency of pleadings to support a judgment a post-answer default is treated the same as a no-answer default judgment ..." *Stoner*, 578 S.W.2d at 684. Moreover, the court recognized that a default judgment admits all facts which are properly alleged. *Id.*

ing, the court *shall* hear evidence as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in which case the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket. (Emphasis added.)

Plainly, rule 243, *supra,* makes it mandatory upon a court entering default judgment to hear evidence of unliquidated damages. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex.1984), *on remand* 682 S.W.2d 369 (Tex.App.—Dallas 1984, no writ).

Additionally, in *Morgan,* the court held that in a damages estimate hearing in default cases pursuant to rule 243, *supra,* the plaintiff is obliged to present competent evidence of a causal nexus between the event sued upon and the party's alleged injuries. *Morgan,* 675 S.W.2d at 731. The court stated that "from the rule that a default judgment conclusively establishes the defendant's liability, it follows that a default judgment admits that the defendant's conduct caused the event upon which the plaintiff's suit is based." *Id.* The court noted, however, that the defaulting defendant does not admit that the event sued upon caused any of plaintiff's alleged injuries; rather, this is an issue that the plaintiff must prove. *Id.*

■ Thus, although a default judgment operates as an admission of all allegations of the material facts set out in plaintiff's petition, where unliquidated damages are at issue, the plaintiff must present sufficient competent evidence to establish damages and further, must, by competent evidence, prove a causal nexus between the event sued upon and the plaintiff's injuries. *Id.; Stra, Inc. v. Seafirst Commercial Corp.,* 727 S.W.2d 591, 593 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Village Square, Ltd. v. Barton,* 660 S.W.2d 556,

559 (Tex.App.—San Antonio, 1983, writ ref'd n.r.e.); TEX.R.CIV.P. 243.

■ Appellant apparently takes issue with the fact that, notwithstanding the default judgment as to liability, appellee was permitted to introduce "liability" evidence in support of the comparative negligence issues that were to be submitted to the jury. Appellant maintains that appellee could not submit these issues over appellant's objection.

However, in addressing the matter of precisely which party is entitled to submit comparative fault issues, the supreme court expressly disapproved of a court of appeals decision that suggested that [the] negligence of a settling tortfeasor could not be submitted to the jury at the plaintiff's request in order to trigger Article 2212a, § 2(e).[3] *Cypress Creek Util. Serv. Co., Inc. v. Muller,* 640 S.W.2d 860, 865 (Tex.1982) (disapproving *Deal v. Madison,* 576 S.W.2d 409, 416 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.)). Instead, the court recognized that both the plaintiff and the nonsettling defendant have the option to join the settling tortfeasor, submit the settling tortfeasor's negligence to the jury, and thus force the percentage reduction election, rather than the dollar credit. *Cypress Creek,* 640 S.W.2d at 865.

Moreover, as one appellate court acknowledged, "[t]he court has instructed that when a plaintiff in a comparative negligence case establishes *as a matter of law* that a defendant was negligent, then that negligence should be made known to the jury and included in the issue comparing the negligence of the plaintiff and the defendant." *Greater Houston Transp. Co. v. Wilson,* 725 S.W.2d 427, 429 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (emphasis added), citing, *Eagle Trucking Co. v. Texas Bitulithic Co.,* 612 S.W.2d 503, 507 (Tex.1981). Yet another appellate court recognized that in a default situation,

---

**3.** Although the supreme court's discussion actually pertains to art. 2212a, § 2(e), the language referred to is identical to § 33.015, which originally replaced this section and which is germane to the instant case. Act of April 9, 1973, ch. 28, § 2, 1973 Tex.Gen.Laws 41, 42, *repealed* by Act of 1985, ch. 959, § 9(1), 1985 Tex.Gen. Laws 3242, 3271.

appellee should nevertheless be allowed the opportunity to present evidence and submit issues to the jury regarding a party's liability in order to protect himself against the possibility that the default judgment would be successfully attacked on appeal, thus requiring the parties to relitigate issues involving both liability and damages. *St. Gelais v. Jackson,* 769 S.W.2d 249, 254 (Tex.App.—Houston [14th Dist.] 1988, no writ).

In the instant case, it is clear that once the trial court defaulted appellant as to liability, appellee was required to present competent evidence of a causal nexus between the event sued upon and Broom's alleged injuries. Moreover, the record reflects that appellee's sole purpose in presenting evidence relating to liability was to enable appellee to submit comparative fault issues to the jury, as appellee was entitled to under the law espoused in *Cypress Creek.*

We, therefore, conclude that the trial court did not commit reversible error in allowing appellee to present evidence in order to obtain a jury finding on comparative fault.

▌ The question remains, however, as to whether the trial court committed reversible error in preventing Welex, the defaulted party, from presenting evidence preserved by its bills of exceptions. The cases interpreting rule 215 are uniform in holding that the defendant, after a default judgment has been rendered against him, has the right to cross-examine plaintiff's witnesses and interpose objections to testimony offered by those witnesses upon an inquiry into the amount of unliquidated damages. *Brantley,* 662 S.W.2d at 759, citing, *Illinois Employers Ins. Co. of Wau-*

*sau v. Lewis,* 582 S.W.2d 242, 246 (Tex.Civ. App.—Beaumont 1979, writ ref'd n.r.e.); *Rainwater v. Haddox,* 544 S.W.2d 729, 733 (Tex.Civ.App.—Amarillo 1976, no writ). However, *this right does not extend to an inquiry into the basis of the default judgment,* and *a defendant sanctioned under rule 215a may be denied the opportunity to present his grounds of defense to plaintiff's cause of action. Southern Pac. Transp. Co. v. Evans,* 590 S.W.2d 515, 517 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980) (emphasis added).

The record reflects, however, that the trial court did not prevent Welex from presenting comparative fault evidence *solely* on the basis of the default sanction; instead, the record reveals that this evidence was precluded in part because the trial court "foreclosed [appellant] from using those witnesses that were presented for the depositions" but whom appellee was not allowed to depose, "together with the documents" requested by appellee in the subpoena duces tecum that were not produced.[4]

▌ Appellant argues that he was precluded from introducing the testimony of the following witnesses: Roberto Martinez and Walter Rouse (both of whose testimony was excluded due to discovery sanctions); Dr. Varela (whose testimony was excluded as an automatic sanction due to appellant's failure to name this witness); Rogelio Gonzalez and Robert Anderson (both of whom would have testified only as to "how the accident took place"), and; Dr. Cantu (who would have testified with respect to statements Broom allegedly told him regarding "how the accident oc-

---

**4.** As a sanction for failing to allow these parties to be deposed, appellant was precluded from presenting the testimony of the following persons named in the subpoena duces tecum; Robert[o] Martinez, James Orr, Ed Laycock and Walter Rouse. Moreover, the trial court sanctioned appellant for failing to supply addresses for designated experts by limiting its experts to those appellant could produce in Zapata County, with the proviso that they not exceed three, and further, precluded appellant from presenting witnesses it failed to name in accordance with TEX.R.CIV.P. 215.

curred").[5]

■ However, having previously found that the trial court properly sanctioned appellant for discovery abuses, pursuant to rule 215, we likewise conclude that, with respect to the testimony of Martinez, Rouse, and Varela, which was preserved in appellant's bills of exceptions but excluded due to discovery sanctions, the trial court did not err. Further, even if the testimony of Martinez, Rouse and Varela had not been excluded due to discovery sanctions, it is likely that these witnesses' testimony would nonetheless have been excluded as this testimony clearly related solely to "the lack of negligence on the part of Welex." Consequently, our discussion is limited to those witnesses the court did *not* "foreclose[ ] [appellant] from using...."

■ The record indicates that both Gonzalez and Anderson would have testified solely as to Broom's liability but were precluded from doing so as the trial court repeatedly refused to allow any testimony relating to the issue of liability, and in particular, testimony concerning how the accident occurred. Appellant contends, however, that issues regarding liability go directly to the issue of damages, and in order for Welex to properly refute appellee's damages, Welex must be allowed to present evidence contradicting its negligence. Notwithstanding appellant's argument, it is clear that liability was uncontested due to the default sanction properly imposed by the trial judge pursuant to rule 215, and to allow appellant to contest these issues now would be to remove all legal disabilities. *Fleming Mfg. Co., Inc. v. Capitol Brick, Inc.*, 734 S.W.2d 405, 408 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

In *Fleming*, the defaulted defendant likewise argued that it could not effectively defend itself on the issue of damages without an ability to offer proof on liability. *Fleming*, 734 S.W.2d at 408. The defendant contended it was impossible to separate proof on the issue of whether the defective product resulted in lost profits from proof of the nature and existence of a defect. *Id.* As the court stated in *Fleming*, "to allow Fleming to now contest its liability on remand would not only contravene the principles announced in *Morgan*, but would also remove all legal disabilities incurred by Fleming when it failed to answer." *Id.* at 409; *Morgan*, 675 S.W.2d at 731. "We cannot on one hand articulate the rule that a party admits all factual allegations concerning liability when he fails to answer, and then allow such a party to nonetheless contest its liability on remand by arguing that the liability and damages issues are inextricably intertwined." *Fleming*, 734 S.W.2d at 409.

Although preserving an appellee's right to present evidence and submit issues regarding liability, while preventing an appellant from doing the same when the appellant has been defaulted as to liability, may seem especially harsh, to hold otherwise merely because the appellant has placed itself in a precarious position of its own doing would be equally unfair.

■ In addition to excluded testimony, appellant further contends that the trial court erroneously excluded an employment record belonging to Broom's employer, Southwest Services, which reflected statements allegedly made by appellee about a second job-related injury subsequent to the accident made the basis of this suit. While this testimony would clearly go to the issue of damages, the record reflects that the trial court found that this report did not comport with the business records exception to hearsay, as argued by appellant, and therefore, was inadmissible hearsay. To be admissible as part of the business

---

5. Appellant further contends that the trial court erred in excluding medical records which would have allegedly rebutted Broom's version as to how the accident occurred. However, this testimony clearly related to liability; moreover, appellant failed to comply with TEX.R.CIV.EVID. 803(6) in laying the proper predicate required for the business records exception to hearsay; therefore, we reject this argument.

records exception to the hearsay rule, the proponent of the document must establish that it falls within rule 803(6), which states:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, *made at or near the time by, or from information transmitted by, a person with knowledge,* if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), *unless the source of information or the method or circumstance of preparation indicate lack of trustworthiness.* "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

TEX.R.CIV.EVID. 803(6) (emphasis added).

It is clear from the record that this report was not dated; that Mr. Ortiz obtained his 'information' from statements Broom allegedly made to a Mr. Valverde and, no further effort was made to ascertain whether or not Mr. Valverde had personal knowledge as required by the rules; that Mr. Ortiz, appellee's boss, was unable to recall when these documents were prepared, and; that Mr. Ortiz did not recall preparing the reports anytime soon after the accident in question.[6]

■ It is for the trial judge to determine from all the evidence offered whether the personal knowledge required by rule 803(6) is present. *LaFreniere v. Fitzgerald,* 669 S.W.2d 117, 119 (Tex.1984). In the present case, it is plain that the trial court found the requirements for rule 803(6) were lacking. Moreover, appellant has not shown an abuse of discretion by the trial court.

6. In his deposition, Mr. Ortiz repeatedly stated that he could not remember when the report was made, that he could be mistaken, and that

Accordingly, appellant's second point of error is refused.

■ In appellant's third point of error, it is contended that the trial court committed reversible error in overruling objections made by Welex during appellee's closing arguments and in refusing to grant Welex's Motion for New Trial. Although appellant directs this court to several instances wherein objections were made during closing arguments, it is clear from the record that appellant did not preserve error in all of these instances; therefore, we must limit our consideration of this point to only those instances that were properly preserved. TEX.R.APP.P. 52(a).

■ A party complaining of an improper jury argument has the burden to prove: (1) error; (2) that was not invited or provoked; (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial; (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand from the trial court; and (5) the argument by its nature, degree and extent constituted reversibly harmful error. *Gannett Outdoor Co. of Texas v. Kubeczka,* 710 S.W.2d 79, 86 (Tex.App.—Houston [14th Dist.] 1986, no writ).

The court in *Gannett* noted that the test of improper jury argument is whether a juror of ordinary intelligence would have been persuaded by the argument to agree to a verdict contrary to that to which he would have agreed but for such argument. *Gannett,* 710 S.W.2d at 86.

We direct our attention to the following statements made during closing arguments which were properly objected to and preserved by the appellant:

(1) that Welex had other witnesses it could have called but didn't;

(2) that Welex didn't want the jury to see evidence of the record earnings and tried to keep this evidence out;

he "didn't prepare this [report] two days after the accident ..."

(3) that counsel for Welex was a skillful lawyer laying a trap and that he would probably be doing the same two weeks from now as he defended some other defendant who had injured yet another plaintiff; and

(4) lastly, appellee suggested that since prize fighters and baseball players earn millions, appellee's client should be awarded a commensurate amount.

█ In connection with appellant's second, third and fourth contentions, cited above, appellant has failed to show that a jury of average intelligence would have been persuaded by the arguments to agree to a verdict contrary to that which they would have agreed to but for such arguments, or that this jury was so affected. *Gannett*, 710 S.W.2d at 86. We, therefore, find that with respect to these three contentions, appellant has failed to show reversible error. *Id.*

█ With respect to appellant's first contention, the record reflects that, prior to appellee's rebuttal, in appellant's closing argument, appellant stated that "the only evidence that you heard as to this accident from the plaintiff's side is what Mr. Broom told you in those fifteen seconds ..." and "... you notice that they [counsel for Broom] didn't dare put back ... Mr. Martinez on the stand." Appellee's response that "[Welex] had witnesses out there ... they had employees out there ... they could have come in and testified ..." was, in effect, invited or provoked and while it may have constituted error, appellant should not profit because of any alleged harm it instigated. *Gannett*, 710 S.W.2d at 86.

We accordingly overrule appellant's third point of error.

Appellant next argues, in points of error four through seven, that the trial court committed reversible error in refusing to grant Welex's Motion for New Trial, Motion for Judgment Non Obstante Veredicto, and Motion for remittitur because the evidence was factually and legally insufficient to support the jury's findings on liability and damages; further, appellant argues the trial court abused its discretion and erred as a matter of law in allowing appellee to amend his pleadings to reflect an increase in damages awarded by the jury.

█ A legal sufficiency point is a question of law; we can consider only that evidence and the reasonable inferences which, viewed in the most favorable light, support the jury findings. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988); *Glover v. Texas General Indem. Co*, 619 S.W.2d 400, 401 (Tex.1981); *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 904 (Tex.1980).

█ With respect to those points of error where the factual sufficiency is raised, we will sustain the fact finders unless it is found the evidence is so weak or against the great weight and preponderance of the evidence such that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Tri–State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 491 (Tex.App.—Houston [14th Dist.] 1989, no writ).

█ However, a jury's findings on damages will not be disturbed on appeal on grounds of excessiveness if there is any probative evidence to sustain the award. *Tri–State Motor Transit*, 765 S.W.2d at 493. We emphasize, moreover, that it is for the jury to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the evidence. *Town & Country Mobile Homes, Inc. v. Bilyeu*, 694 S.W.2d 651, 656 (Tex.App.—Fort Worth 1985, no writ). Therefore, in determining the sufficiency of the evidence, appellate courts must accept the jury's resolution of any conflicts or inconsistencies in the evidence. *Pool*, 715 S.W.2d at 629.

█ The record reflects that Broom testified as to his past medical and surgical expenses. He further testified that, at the

time of trial, he was still in constant pain and that he took pain medication on a daily basis. Broom testified that before his injury, he was athletic and exercised regularly, and that he was no longer able to participate in any of these activities. Broom also testified that he had trouble doing even general house repairs and was concerned with not being able to engage in family activities, especially with his son. Additionally, Broom stated that he still had a five or six inch scar along the top of his shoulder which caused him some embarrassment. Broom also related that due to his inability to obtain employment he was capable of performing, he currently lives in an apartment provided by the Laredo Housing Authority, and for the first time in his life, requires welfare assistance.

Dr. Richard Wilson, an orthopedic surgeon, diagnosed Broom's injury as a rotator cuff tear, which Dr. Wilson stated would not restore itself for an entire year, and recommended that Broom have surgery. Dr. Wilson further testified that it was his opinion that Broom suffered a thirty (30)% physical impairment in his shoulder, that Broom's limitation of motion and pain would continue in the future, and that Broom's condition would be permanent in nature. Dr. Wilson stated he did not recommend that Mr. Broom return to any type of work that would require frequent lifting, pushing, pulling or the use of force with his injured shoulder, and that Broom would continue to require treatment in the future. Broom indicated to Dr. Wilson during office visits from January of 1987 through January of 1989 that he was in pain. Dr. Wilson concluded that Broom's condition might improve gradually over the next three to five years with an improvement of approximately five (5)% and further, that Broom's future physical therapy would have to be determined on a month to month basis.

Broom's wife testified as to the effects of Broom's injuries. She stated that Broom worries about his future and whether he will be able to support his family.

Mrs. Broom further testified that prior to the accident, Broom was outgoing, friendly, and very athletic; however, since the accident, Broom does not like to do much because he is in constant pain, suffers from continual depression and is very moody. Mrs. Broom also testified that Broom was a hard worker who liked his job, but due to his injuries, Broom is unable to work, has difficulty sleeping, and is unable to play with his son.

Moreover, Welex's expert, Dr. Jose Carreras, testified that he would expect Broom to be required to purchase pain medication as part of his future medical expenses. He further agreed that Dr. Wilson would be in a better position to analyze and discuss Broom's condition, impairments, and disabilities after treating Broom for two years and performing three surgeries on Broom. Dr. Carreras further agreed with Dr. Wilson that Broom had a permanent physical disability to the shoulder and that he should not go back to any type of heavy manual labor or work requiring strenuous pushing and pulling.

Dr. Rawleigh Ralls, a consulting economist, testified as to the present cash value of Broom's lost earnings capacity, the average life expectancy of Broom, his total lost income in the past and projected lost income in the future, as well as lost fringe benefits.

Considering all of the record, we cannot say that the jury's findings were so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 456–457 (Tex.1985). Having found sufficient evidence to support the award of damages, and having previously resolved that no evidence was required to support the default as to liability, we find no need to address the legal insufficiency point.

■ Appellant further argues that the trial court erred in allowing Broom to amend his pleadings after the jury returned its verdict to increase the amount of

damages plead, and relies on appellate court holdings that a trial court abuses its discretion in allowing a post-verdict amendment increasing damages to confirm to the verdict. *Burk Royalty Co. v. Walls*, 596 S.W.2d 932, 938 (Tex.Civ.App.—Fort Worth 1980), *aff'd on other grounds*, 616 S.W.2d 911 (Tex.1981); *Winn–Dixie Texas, Inc. v. Buck*, 719 S.W.2d 251, 255 (Tex.App.—Fort Worth 1986, no writ). However, in a recent opinion, the supreme court disapproved these holdings because they directly conflicted with procedural rules 63 and 66, and expounded that "[n]ot only did the trial court *not* abuse its discretion in granting the amendment, it would have been an abuse of discretion if the trial court had refused the amendment." *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990). Moreover, the court stated that "[u]nder Rules 63 and 66 a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice, TEX.R. CIV.P. 63 and 66; *Hardin v. Hardin*, 597 S.W.2d 347, 350–51 (Tex.1980); or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. The burden of showing prejudice or surprise rests on the party resisting the amendment." *Greenhalgh*, 787 S.W.2d at 939, citing, *Patino v. Texas Employers Ins. Ass'n*, 491 S.W.2d 754, 756 (Tex.Civ. App.—Austin 1973, writ ref'd n.r.e.).

In the present case, Welex has neither alleged nor demonstrated surprise; nor has appellant claimed that a new cause of action was alleged in the amended pleading as required by the Rules of Civil Procedure. TEX.R.CIV.P. 63; 66.

Appellant's points of error four through seven are overruled.

■ In appellant's eighth point of error, appellant asserts that the trial court committed reversible error in failing to reduce appellee's recovery by the amount that Transamerican paid appellee in settlement. The record reflects that appellee Broom sued both Transamerican and Welex. Although Welex filed a counter-claim against Transamerican, the counter-claim was subsequently withdrawn prior to trial upon Welex's learning that Transamerican had settled with appellee. However, notwithstanding this settlement, Broom did not dismiss or nonsuit Transamerican but rather, as we have previously noted, insisted that the existence and amount of Transamerican's negligence be submitted to the jury and that Transamerican's percentage of negligence be found by the jury. Appellant argues that any contribution should be effected by reducing Broom's recovery by the amount paid by Transamerican in settlement and cites this court to former TEX. CIV.PRAC. & REM.CODE ANN. § 33.014, now amended, which provides in pertinent part:

> If the existence and amount of an alleged joint tort-feasor's negligence *are not submitted to the jury* because the tort-feasor has paid an amount in settlement to a claimant and was not joined as a party defendant *or having been joined, was dismissed or nonsuited after settling,* each defendant is entitled to deduct from the amount for which he is liable to the claimant a percentage of the amount of the settlement based on the ratio of the defendant's negligence to the total negligence of all defendants.[7] (Emphasis added.)

Clearly, this provision does not apply in the instant case since the settling defendant's negligence was submitted to the jury. We note, instead, that the applicable provision, § 33.015, now repealed, states the following:

> *If an alleged joint tort-feasor settles with a claimant but is joined as a party defendant when the case is submitted to the jury so that the existence and amount of his negligence are submitted to the jury and his percentage of negli-*

---

**7.** Act of June 16, 1985, ch. 959, § 1, 1985 Tex. Gen.Laws 3242, 3271, *amended by* June 16, 1987, ch. 2, § 2.10, 1987 Tex.Gen.Laws 37, 43, hereinafter referred to as § 33.014.

*gence is found by the jury, the settlement is a complete release of the portion of the judgment attributable to him.*[8] (Emphasis added.)

While § 33.014 specifically entitles a non-settling defendant to deduct a part of the settlement from the amount for which he is liable to the claimant, no corresponding right is allocated in § 33.015. Moreover, the supreme court has construed the segment of article 2212a, § 2(e), which is identical to § 33.015, the provision in question, and refers to "... a complete release of the portion of the judgment attributable ..." to .mean that the percentage of negligence attributable to the settling tortfeasor is deducted from the plaintiff's damages. *Dabney v. Home Ins. Co.*, 643 S.W.2d 386, 390 (Tex.1982). In *Dabney*, the court noted that the proper method by which this release occurs is to multiply the settling defendant's percentage of negligence by the total damages and then to deduct that amount from the total damages. *Id.* Furthermore, the Texas Supreme Court held that "[w]hen the negligence of a settling tortfeasor is submitted to the jury and is determined, the amount paid in settlement is *irrelevant.*" *Cypress Creek*, 640 S.W.2d at 864 (emphasis added). Additionally, both the plaintiff and the nonsettling defendant have the option to join the settling tortfeasor, submit the settling tortfeasor's negligence to the jury, and thus force the percentage reduction election, rather than the dollar credit. *Id.* at 865.

In the present case, the record reflects that the judgment did, in fact, include a deduction of one (1) percent which was the percentage of negligence which the jury found attributable to Transamerican. We find that in view of the law previously cited, a deduction of the percentage of negligence attributed to the settling defendant was clearly correct. Further, appellant's contention that he is entitled to an additional reduction in the amount that Transamerican paid appellee in settlement is unfound-

ed, and would conflict with the supreme court's holding in *Dabney*. *Dabney*, 643 S.W.2d at 390. We, therefore, overrule appellant's eighth point of error.

 Appellant insists, in his ninth point of error, that the trial court committed reversible error in refusing to allow Welex to make its bill of exceptions on the excluded testimony of Gonzalez and Anderson before the jury was charged; however, this point was not supported by either argument or authority in appellant's brief, and therefore, nothing is presented for review. *Essex Crane Rental Corp. v. Striland Constr. Co., Inc.*, 753 S.W.2d 751, 756 (Tex.App.—Dallas 1988, writ denied); TEX.R.APP.P. 74(f)(2). Further, we fail to see, and appellant neglects to point out, how presenting its bill of exception after the jury charge, as opposed to before the jury charge, "... amounts to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court." TEX.R.APP.P. 81(b)(1). Consequently, even if we considered this error, it is not shown to be reversible error. *Id.*

 Finally, under a heading in appellant's brief entitled "Cumulative Error and Conclusion", appellant combines his tenth and eleventh points of error. The majority of appellant's contentions regarding "the cumulative effects of the trial court's errors" are redundant, and have been previously addressed. However, appellant does contend for the first time that "the trial court erred in ruling that documents received by the clerk in Webb County would be treated as if filed with the clerk of the Zapata County District Court ...," and in ordering that certain papers found in the trial court's file that did not bear a "filed" stamp or a "received" stamp and that did

---

**8.** Act of June 16, 1985, ch. 959, § 1, 1985 Tex. Gen.Laws 3242, 3271, *amended by* June 16, 1987, ch. 2, § 2.11, 1987. Tex.Gen.Laws 37, 43, hereinafter referred to as § 33.015.

not appear on the court's docket sheet would be treated as if filed. Nevertheless, appellant has failed to either allege or show the following: that any of these documents were ever introduced into evidence; that a timely objection was made to the introduction; that a ruling was obtained to the objections, or; how the ruling harmed appellant. TEX.R.APP.P. 81; 52(a). Appellant has, thus, failed to preserve, allege, or show reversible error. *Id.* The points are rejected.

The judgment of the trial court is affirmed.

CADENA, J., concurs with results.

BIERY, Justice, concurring.

I reluctantly concur in the overruling of Welex's second point of error.

Following the discovery sanction of defaulting Welex, which I agree does not rise to the level of an abuse of discretion, the practical effect of allowing Broom to present evidence of comparative fault and in preventing Welex from presenting the evidence preserved in its bills of exception was a damage trial not played on a level playing field.

Welex went into the arena, having been defaulted on liability, with one hand tied behind its back. The inability to defend against Broom's evidence effectively tied Welex's other hand. We are unfortunately constrained, however, by our supreme court's holding in *Morgan*, 675 S.W.2d at 731, that the plaintiff is obliged to present evidence of a causal nexus between the event sued upon and the party's alleged injuries. This is simply another way of saying that the plaintiff must prove proximate cause and yet we have historically understood causation to be a part of liability.

When *Cypress Creek*, 640 S.W.2d at 865, is applied and if *Morgan* is to continue to be the law, we are asking the factfinder, in multiple party cases such as this, to "compare" the negligence of the alleged tort-feasors and to find a "causal nexus" without knowing fully what happened.

I yield to the higher court authorities cited by the majority and, based upon that acquiescence, concur.